JOHN R. WOOD AND SADIE L. WOOD, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 6865–70SC.   Filed November 15, 1971.

*I. W. Whitesell, Jr.*, for the petitioners.
*Robert J. Shilliday, Jr.*, for the respondent.

ATKINS, *Judge:* The respondent determined a deficiency in income tax for the taxable year 1967 in the amount of $391.68. The only issue for decision is whether certain expenses incurred by petitioner John R. Wood in making a trip to the Philippines to attend commemoration ceremonies honoring the Second World War Defenders of Bataan and Corregidor are deductible under section 170 of the Internal Revenue Code of 1954 as charitable contributions to American Defenders of Bataan and Corregidor, Inc., an organization of war veterans, within the meaning of section 170(c) (3) of the Code.

### FINDINGS OF FACT

Some of the facts have been stipulated and are incorporated herein by this reference.

The petitioners, husband and wife, filed a joint return for the taxable year 1967 with the district director of internal revenue, Jacksonville, Fla. At the time they filed their petition herein they resided in Sarasota, Fla. Inasmuch as Sadie L. Wood is a petitioner herein only because of having filed a joint return for 1967, John R. Wood will hereinafter be referred to as the petitioner.

During 1967 the petitioner was a member of American Defenders of Bataan and Corregidor, Inc., hereinafter referred to as the American Defenders, an organization incorporated under the laws of Massachusetts.[1] Membership in such organization was limited to those persons who served in the Armed Forces of the United States in the defense of the Philippines between December 7, 1941, and May 10, 1942, and others attached to any unit of force of the Asiatic Fleet, Philippine Archipelago, Wake Island, Midway Island, the Mariana Islands, or the Dutch East Indies during such period.[2] In 1967 the total membership of the American Defenders was about 1,350.

During the period April 7 through April 10, 1967, ceremonies were held in the Republic of the Philippines commemorating the 25th anniversary of the fall of Bataan and of Corregidor. The various activities comprising the commemoration ceremonies were organized and arranged by the Defenders of Bataan and Corregidor, hereinafter referred to as the Philippine Defenders, an organization which was the Philippine counterpart of the American Defenders. The American Defenders were invited to attend the ceremonies by the Philippine Defenders and, after discussions with respect thereto were had at their 1965 and 1966 conventions, a trip by the American Defenders to the Philippines was planned.

Included in the commemoration ceremonies were dedications with respect to the defense of Mt. Samat and the Bataan Death March, wreath-laying ceremonies at the American and the Philippine National Cemeteries, and a visit to Corregidor. The ceremonies also included formal sessions of the 13th annual national convention of the Philippine Defenders. The 22d national convention of the American

---

[1] It is agreed by the parties that during the year involved herein such organization was an organization exempt from tax by reason of sec. 501(c)(4), I.R.C. 1954, and an organization to which contributions were deductible by reason of sec. 170(c)(3) of the Code.

[2] The constitution and bylaws of the American Defenders provided that its objects were:

"To hold, own and/or control real estate and/or personal property acquired by gift or purchase or otherwise whenever possible.

"To foster patriotism and civic loyalty and to perpetuate and strengthen friendship.

"To care for the widows and orphans of our deceased or unfortunate comrades.

"To assist and make lighter the circumstances of our comrades who have been injured or handicapped as a result of service in World War II."

Such constitution and bylaws further provided that:

"A National Convention shall be held once each year at such time and place as shall be determined by the Executive Board. The utmost effort shall be made to hold the National Convention on or as near as possible to the anniversary of the fall of Bataan, April 9th or the anniversary of the fall of Corregidor, May 6th."

Defenders which, were it not for the commemoration ceremonies, would normally have been held in or around the months of April or May 1967, was subsequently held in Philadelphia during August 1967.

The trip to the Philippines was open to all members of the American Defenders who wished to attend. About 280 members accepted and, together with wives and others, about 480 persons made the trip. Three airplanes were chartered, such planes departing for the Philippines at 2-day intervals from their respective departure sites of San Francisco, Chicago, and New York.

The petitioner's flight arrived in Manila late in the afternoon of April 7, 1967, the first day of the commemoration ceremonies, and he did not attend any of the scheduled activities on that day. Thereafter, he attended the remaining scheduled activities. During the interval between the last day of the ceremonies, April 10, 1967, and the day petitioner's flight departed for the United States, April 19, 1967, the petitioner visited with old friends and made trips to the places where he was imprisoned by the Japanese during the war.

The national commander of the American Defenders issued to the petitioner a letter on the letterhead of the organization, dated April 1, 1967, addressed "To Whom It May Concern," stating, in part, that petitioner:

is an official DELEGATE of the American Defenders of Bataan and Corregidor, Inc., and of the 25th Anniversary Pilgrimage Group who shall proceed from their respective homes on a journey to Manila in the Republic of the Philippines, to arrive there on or before 9 April 1967 and in time to participate in ceremonies commemorating the 25th Anniversary of The Fall of the Philippines.

Each member who made the trip was similarly designated. Some of such letters were mailed when the various members signed up for the trip, but others were mailed at a much later date. None of the designated delegates had any specific authority or duties nor did they vote on any matter of business while in the Philippines. Attendance at the various scheduled activities of the commemoration ceremonies was on a voluntary basis.

All of the members who made the trip were given awards recognizing their participation in the commemoration ceremonies. Such awards, turned over to their then national commander in gross and in blank by the Philippine Defenders, were subsequently filled out by him with the names of the members who made the trip.

With respect to his trip to the Philippines the petitioner incurred expenses for air transportation in the amount of $829.92, food in the amount of $260, taxicabs and tips in the amount of $186, and passport in the amount of $9. On their return for the taxable year 1967 the petitioners claimed a charitable contribution deduction in the amount of $1,418.40 on account of petitioner's "Unreimbursed expenses as a

Delegate of the American Defenders of Bataan and Corregidor, Inc. to Philippines in April, 1967." Although petitioner's wife accompanied him on the trip, no deduction was claimed with respect to expenses attributable to her. In the notice of deficiency the respondent disallowed the above claimed deduction.

## OPINION

Section 170 of the Internal Revenue Code of 1954 [2] provides a deduction for contributions made to certain organizations of war veterans, and it is agreed by the parties that the American Defenders constituted such an organization during the taxable year here involved. Section 1.170-2, Income Tax Regs., [3] provides that no deduction is allowable with respect to the contribution of services to a qualifying organization, but that unreimbursed expenditures made incident to the rendition of such services may constitute a deductible contribution.

The respondent has issued a number of rulings with respect to what expenses constitute expenditures made incident to the rendition of services within the meaning of the regulations referred to hereinabove.[4] The parties herein have focused their attention on one such ruling, Rev. Rul. 58-240, 1958-1 C.B. 141. In such ruling the respondent held in part that:

"the unreimbursed expenses incurred by a member of the American Legion in attending, as a delegate, an American Legion Convention, and unreimbursed

---

[2] Such section provides in part as follows:
CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS.
   (a) ALLOWANCE OF DEDUCTION.—
      (1) GENERAL RULE.—There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary or his delegate.
      (c) CHARITABLE CONTRIBUTION DEFINED.—For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of—
         *        *        *        *        *        *        *
      (3) A post or organization of war veterans, or an auxiliary unit or society of, or trust or foundation for, any such post or organization—
         (A) organized in the United States or any of its possessions, and
         (B) no part of the net earnings of which inures to the benefit of any private shareholder or individual.
[3] Such section provides in part as follows:
Charitable deductions by individuals; limitations.—
         *        *        *        *        *        *        *
   (2) No deduction is allowable for contribution of services. However, unreimbursed expenditures made *incident to the rendition of services* to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform *without general utility* which is *required to be worn in performing donated services* is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred *in rendering donated services* are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home *in the course of rendering donated services* also are deductible. * * * [Emphasis supplied.]
[4] Included among the rulings to which the parties have made reference are Rev. Rul. 55-4, 1955-1 C.B. 291; Rev. Rul. 61-46, 1961-1 C.B. 51; Rev. Rul. 65-285, 1965-2 C.B. 56; and Rev. Rul. 71-135, 1971-1 C.B. 94.

expenses directly connected with and solely attributable to the rendition of such volunteer services by [such member] * * * to the American Legion, constitute contributions within the meaning of section 170 of the 1954 Code and are deductible in computing taxable income to the extent provided therein. * * *

\*     \*     \*     \*     \*     \*     \*

This ruling is equally applicable to similar situations involving unreimbursed expenses of members of any other organization attending a convention as a delegate, where the organization meets the qualifications of section 170(c) of the Code.

It thus appears that the respondent would consider the attendance by a member, as a delegate to a convention of a qualifying organization, as the rendition of a service to such organization within the meaning of section 1.170–2, Income Tax Regs. However, he contends that petitioner was not in reality a delegate and that the commemoration ceremonies did not constitute a convention of the American Defenders. On the other hand, the petitioner contends that such ceremonies constituted the convention of the organization and that he qualified as a delegate.

It seems clear to us from the record that even if petitioner were to be considered a "delegate" of the American Defenders (a question which we do not decide) the commemoration ceremonies which were held in the Philippines in April 1967, did not constitute the "convention" of such organization. Rather, such ceremonies constituted the "convention" of the Philippine Defenders—the "convention" of the American Defenders was subsequently held in Philadelphia during August 1967. Petitioner therefore does not meet these tests of the ruling.

In Rev. Rul. 58–240, as well as in the other rulings to which the parties have directed our attention, reference is made to the deductibility of unreimbursed expenses *connected with and solely attributable to the rendition of services* to the qualifying organization. Such language comports with the regulations referred to hereinabove and focuses on the basic requirement for deductibility, namely, the rendition of donated services to the qualifying organization.

The evidence discloses that the only activity of the petitioner with respect to the commemoration ceremonies consisted of his voluntary attendance at the functions held, except those on the first day. He performed no duties on behalf of the American Defenders nor did he participate in any matter of business affecting it. It appears that the petitioner takes the position that his attendance at the commemorative ceremonies constituted participation therein, that this had the effect of furthering certain "charitable" purposes of the American Defenders, and that therefore such attendance constituted the voluntary rendition of services to it. We cannot agree. Petitioner has cited no case, and

we have found none, which would support a conclusion that such attendance would constitute the rendition of a service within the meaning of the regulations. Praiseworthy as was the patriotic spirit displayed by the petitioner and others who attended the ceremonies, we think that petitioner's attendance was for his personal benefit and that the expenses he incurred were nondeductible personal expenses within the meaning of section 262 of the Code. See *Arthur I. Saltzman*, 54 T.C. 722, and cases cited therein.

We approve the respondent's disallowance of the claimed deduction.

*Decision will be entered for the respondent.*