CECIL W. STEVENSON and LILLIAN STEVENSON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Stevenson v. Commissioner
Docket No. 2374-75.
United States Tax Court
T.C. Memo 1977-260; 1977 Tax Ct. Memo LEXIS 181; 36 T.C.M. (CCH) 1050; T.C.M. (RIA) 770260; August 10, 1977, Filed *181 Cecil W. Stevenson received expense allowances, reimbursements, and airline tickets which petitioners failed to report on their Federal income tax returns. Petitioners kept inadequate records of how the amounts received were spent. Petitioners also failed to report income determined. Held further, for each of the years in question petitioners are liable for the negligence penalty imposed by sec. 6653(a), I.R.C. 1954. Marvin L. Kieffer, for the petitioners. Daniel A. Taylor, *183 Jr., for the respondent. WILES
MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: Addition to Tax Year
Deficiency
Sec. 6653(a) [1]
1970
$ 5,779.84
$288.99
1971
7,302.77
365.14
1972
940.89
47.05
Because of concessions by the parties only two issues remain for consideration. First, we must determine whether petitioners' gross income should be increased to reflect expense allowances and travel reimbursements paid to petitioner Cecil W. Stevenson. Second, we must determine whether any part of the underpayment of taxes occurring in each year was due to negligence under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife, resided in Jonesboro, Arkansas, when they timely filed their joint Federal income tax returns for the years in question, and when they timely filed their petition herein. During the years in question, Cecil W. Stevenson (hereinafter *184 petitioner) was employed by the United States Postal Service as a rural mail carrier. In addition to his employment as a mail carrier, petitioner, a World War II veteran with a service related disability, was actively involved with the Disabled American Veterans (hereinafter the DAV). The DAV is an organization described in section 501(c)(4) and exempt from taxation under section 501(a), contributions to which are deductible under section 170. From August 1, 1969 until August 1, 1970, petitioner acted as the senior Vice Commander of the DAV; from August 1, 1970 until August 12, 1971, petitioner was the National Commander of the DAV. In order to properly perform his duties as National Commander, petitioner took a one-year leave of absence, without pay, from the United States Postal Service. This leave of absence commenced August 22, 1970. In his association with the DAV, petitioner traveled extensively; during 1970, petitioner traveled for 128 days; during 1971, he traveled 174 days; and during 1972, he traveled 21 days. In his travels, petitioner went to state DAV conventions in several dozen cities within the continental United States, went to Hawaii, and went to Europe from *185 August 28, 1970 until September 16, 1970. He met with local DAV leaders, members of Congress, and on three occasions, the President of the United States. His official duties included appearing before congressional committees to discuss pending legislation, attending local DAV conventions, meeting diplomatic personnel, and making tape recordings for broadcast in Europe and Asia. While in Europe petitioner's primary concern was ameliorating the conditions of United States prisoners of war, taken while fighting in Vietnam. To this end, he attended meetings of the World Veterans Federation in Vienna, Austria, and attempted to obtain an audience with Pope Paul VI in Rome. While petitioner was National Commander, his travel arrangements were made by the DAV National staff. Occasionally petitioner's wife accompanied him on his trips around the continental United States. She also accompanied him on his trip to Europe and on his trip to Hawaii. Occasionally she participated in ceremonies and sat in on meetings: on their Hawaiian trip, she took part in a memorial service on the battleship Arizona, and while in Europe she sat in on meetings of the World Veterans Federation. In *186 addition to attending meetings of the World Veterans Federation in Vienna, petitioner and his wife traveled to Paris, Rome, and Brussels. In Rome, petitioner attempted to arrange an audience with Pope Paul VI; in Brussels, petitioner talked with some people in connection with the Strategic Arms Limitation Talks; and in Paris he met with the Secretary General of the World Veterans Federation, and with members of the South Vietnamese Embassy. Although petitioner's wife accompanied him on his entire European trip, at no time was her presence required, and although she attended some of the World Veterans Federation meetings in Vienna, at no time did she actively participate in any of the proceedings. During the years in question the DAV's bylaws read in part: The National Commander shall not be considered a paid employee of the National Department; and in lieu of compensation, he shall receive an amount as expenses for his year's tenure to be fixed by the National Finance Committee, with the approval of the National Executive Committee. Transportation expense shall be allowed, in addition. Travel and per diem expenses shall be paid by the National Organization to the National *187 Commander, the National Senior Vice-Commander, the National Junior Vice-Commanders, the National Judge Advocate, the National Chaplain, the members of the National Finance Committee, the National Executive Committeemen, the National Adjutant, the National Service Director, the Director of Legislation, the Assistant National Service Director of Employment, together with sufficient clerical help from National Headquarters to adequately conduct the affairs of the National Organization at the convention, while traveling to, remaining at, and returning from the National Convention. The above travel and per diem expense as well as other travel expense authorized by the National Commander may be paid on an accountable prepaid expense basis. Similarly, the DAV's regulations read in part: (a) The National Organization shall pay to the National Commander a monthly expense allowance from the date of his election to the date of the election of his successor, the amount determined by the adoption of the budget. In addition, the National Commander shall be reimbursed for such transportation expenses as he may deem necessary to carry out the duties of his office, provided said expenses do not *188 exceed the budgeted figure. Hotel expense while in Cincinnati and Washington, D.C., shall be paid to him. (b) The National Adjutant and the Comptroller are hereby authorized to withdraw funds for authorized purposes upon their joint signatures only, either manually signed or by signature plates. All withdrawals must be supported by properly executed vouchers. (c) The Comptroller is hereby authorized to sign vouchers for payment of routine expense items. All other vouchers must be signed by the National Adjutant. (d) * * *, the National Adjutant is authorized to pay expenses to persons whose duties require their attendance at the National Convention, National Executive Committee meetings, National Finance Committee meetings, or other official meetings pursuant to the National Bylaws on a transportation and per diem allowance basis. The per diem allowance shall be (see note below) per day. The per diem allowance will apply beginning from the date of departure from home to the date of return to home. Travel time will not exceed three (3) days each way. Transportation allowance will not exceed the actual cost of first class air plane, bus or train (including Pullman) fare. *189 (NOTE): Effective June 1, 1968, the per diem was $30.00 per day. Effective June 1, 1970, the per diem was $40.00 per day. Effective on or about July 24, 1970, the per diem was $50.00 per day. Effective on or about June 1, 1972, the per diem was $60.000 per day. (e) Travel expenses will be paid only when prior written approval has been given by the National Commander, National Adjutant or National Service Director. As National Commander petitioner received a monthly expense allowance. He was not required to account to the DAV how he spent this allowance. In addition, during all three years petitioner received travel reimbursements, and on two occasions was given airline tickets. As a result of the monthly expense allowance, travel reimbursements, and transportation furnished petitioner, petitioner received the following amounts from the DAV: 1970
1971
1972
Monthly Expense Allowance
$16,666.65
$24,623.55
-0-
Other Travel Allowances
For Which Petitioner
Submitted Travel Authori-
zations or Vouchers
5,226.03
1,812.29
$2,041.63
Airline Tickets Furnished
by DAV to Petitioner: Europe
1,913.66
Hawaii
949.84
$23,806.34
$27,385.68
$2,041.63
*190 Of this amount received, petitioners reported, as miscellaneous income, excess expense allowances [2] of $2,800 for 1970, and $2,440 for 1971. The effect of this is that petitioners must account for the expenditure of $21,006.34 for 1970; $24,945.68 for 1971; and $2,041.63 for 1972. In his notice of deficiency, through stipulation, and on brief, respondent has allowed the following deductions: 1970
1971
1972
BALANCES FORWARD
$21,006.34
$24,945.68
$2,041.63
In Notice of Deficiency
Respondent Allowed
Deductions: (1) Petitioner's
Portion of Airline
Tickets - Europe
(963.32)
Hawaii
(474.94)
(2) Food, Lodging,
Transportation and
Incidental Expenses
(5,621.18)
(3,352.87)
(1,125.49)
Taxable Receipts From
Increase In Excess
Expense and Travel
Allowance Per Respond-
ent's Notice of
Deficiency
14,421.84
21,117.87
916.14
Respondent concedes that
Petitioner is entitled to
additional deductions
based on Respondent's
allowances of $25 and $10
per day as per diem travel
allowances
(35.00)
(925.00)
(50.00)
Taxable Receipts From
Increase In Excess Expense
and Travel Allowance
$14,386.84
$20,192.87
$866.14
*191 In order to determine what deductions petitioner was entitled to for 1970 and 1971, respondent's agent requested petitioner to provide documentation of how he spent his monthly expense allowance. None was provided, so respondent's agent estimated petitioner's expenses. Initially, the agent determined the number of days petitioner was out of town. The agent then allowed petitioner a per diem deduction of either $10 or $25 per day for each day out of town. The lower figure was used for determining per diem expenses in Cincinnati and Washington, D.C., where petitioner was provided a hotel room by the DAV.The higher figure was used for determining per diem expenses in all other cities. In addition to the per diem deduction that reduced the monthly allowance petitioner received while he was National Commander, respondent's agent, with one exception, allowed deductions for all other amounts that petitioner spent and for which he submitted expense vouchers to the DAV for reimbursement. The one exception to this rule occurred when the expense voucher covered meals and lodging.In this case, respondent's agent, as in the case with per diem deductions, limited expense voucher deductions *192 to $10 or $25 per day depending on the city. For 1972, respondent's agent again requested substantiation of expenses. When provided, the expense deductions were allowed in full. Again, if petitioner had submitted expense vouchers to the DAV for reimbursement, respondent's agent allowed a deduction for the amount of the voucher except that hotel and meal deductions were limited to $10 or $25 per day. At trial, petitioner provided some additional documentation of expenses: eight personal checks, one hotel bill, and six dining room receipts. The parties have stipulated that petitioners failed to report interest income of $1,032.75, $1,094.49, and $795.41 in 1970, 1971, and 1972, respectively. OPINION All but two issues have been settled by the parties. We must determine whether petitioners' taxable income should be increased to reflect expense allowances and travel reimbursements received by petitioner Cecil W. Stevenson from the DAV. We must also decide whether any part of petitioners' income tax deficiencies during each of the years in question was due to negligence under section 6653(a). Basing their argument on Rev. Rul. 67-30, 1967-1 C.B. 9, [3] petitioners *193 contend the following: Cecil W. Stevenson was an employee of the United States Postal Service. He also performed gratuitous services for a charitable organization, the DAV. While performing these services, petitioner was granted expense allowances and reimbursements. Under the respondent's revenue ruling, the expense allowances and reimbursements are includable in gross income only to the extent they exceed actual expenses incurred while away from home, performing gratuitous services.To the extent the actual expenses incurred performing such services exceed reimbursements and allowances, petitioners contend they are entitled to deductions for charitable contributions under section 170(a). Applying the approach of respondent's revenue ruling, petitioners contend they properly reported the travel allowances and reimbursements to the extent the amount received exceeded actual expenses. They therefore conclude that no additional amounts must be included in income. *194 Respondent contends otherwise. Initially, respondent's position was that the entire amount of travel allowances received--the expense allowance given to petitioner while National Commander, all reimbursements, and the value of airline tickets--was includable in gross income, and that petitioners were entitled to deductions for those travel expenses properly allowed under section 162 and properly substantiated under section 274. On brief, respondent modified his approach and now suggests that petitioners may choose either to report the entire amount of travel allowance in gross income and then deduct those expenses that are properly allowed under section 162 and properly substantiated under section 274, or petitioners may follow the approach of Rev. Rul. 67-30, and include in gross income the travel allowances and reimbursements to the extent that they exceed actual expenses incurred. As phrased by respondent "petitioners may claim properly substantiated deductions under either Code§ 162 or Code§ 170." "Whether petitioner chooses to include the travel advances *195 in gross income and deduct substantiated expenditures under Code§ 162 and Code § 62(2) to reach adjusted gross income or chooses instead to only include the net in gross income under the rationale of Rev. Rul. 67-30, the result will be the same." With this concession of legal approach by respondent, the parties agree that petitioner must only include in gross income the amount of travel allowance and reimbursements they received, less amounts that otherwise would have been deductible under section 170 had they not been reimbursed by the DAV. [4] The parties further agree that the amount of travel allowances and reimbursements they received for 1970, 1971, and 1972 are $23,806.34, $27,385.68, and $2,041.63, respectively. We must therefore determine what amounts petitioner spent in 1970 through 1972 would have been deductible under section 170 had petitioners not been given allowances and reimbursements by the DAV. *196 Generally, section 170(a) provides a deduction for "any charitable contribution * * * payment of which is made within the taxable year." Section 1.170A-1(g), Income Tax Regs., notes that "unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution." For example, "out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible." Sec. 1.170A-1(g), Income Tax Regs.
There is no question in this case that contributions to the DAV, an organization exempt from taxation under section 501(a), are deductible under section 170. Consequently, we must determine the amount of expenses incurred by petitioners while performing donated services. Initially, petitioners contend that respondent acted in an arbitrary and unreasonable manner in determining *197 petitioners' income tax deficiencies. Therefore, petitioners argue, respondent has the burden of proving the correct amount of petitioners' income tax liabilities, and hence it is up to respondent to determine the correct amount of expenses incurred by petitioners while performing donated services. Generally, the burden of proof is upon petitioners. Welch v. Helvering, 290 U.S. 111 (1933); Rule 142e8a), Tax Court Rules of Practice and Procedure. If petitioners show that respondent's determination was arbitrary and unreasonable, respondent's determination will be set aside; the burden of proof will shift. Helvering v. Taylor, 293 U.S. 507 (1935). Unfortunately for petitioners, they have not shown that respondent acted in an arbitrary and unreasonable manner in determining petitioners' income tax liabilities. Respondent's agent requested documents, receipts, and expense records in order to determine petitioners' income tax liabilities. The only records petitioners were able to provide for expenses incurred in 1970 and 1971 were travel vouchers submitted *198 to the DAV for reimbursement. Petitioners produced no records that explained how they spent the monthly expense allowance they received in 1970 and 1971. Lacking any records to explain how approximately $41,000 was spent during 1970 and 1971, respondent's agent was required to reconstruct petitioners' travels and determine an appropriate per diem to cover meals and lodging. While the per diem may have been low for some cities, we must keep in mind that it was petitioners who failed to maintain appropriate records, and it was petitioners who forced respondent's agent to make per diem estimates. Under these circumstances, we are unwilling to conclude respondent acted in an arbitrary and unreasonable manner. In instances where petitioners provided any documentation of their reimbursed expenses, respondent allowed the entire amount with one exception: deductible hotel and meal expenses incurred in 1972 were limited to the per diem amount previously allowed in 1970 and 1971. While this procedure does not precisely follow respondent's revenue ruling, allowing a deduction for actual expenses incurred, we again do not find respondent's method of determining deductions so unreasonable *199 as to shift the burden of proof. We therefore conclude that petitioners still have the burden of proving their actual expenses incurred while performing gratuitous services. In 1970, the DAV gave petitioners round-trip airline tickets to Europe. Petitioners contend that the entire value of these tickets should be excluded from their gross income. We disagree. Although Lillian Stevenson accompanied her husband to Europe, she had no official role in the activities there. She attended some meetings of the World Veterans Federation while in Vienna. Unlike her husband, however, she was not a delegate to those meetings. We do not believe her mere presence at some of those meetings constitutes the rendition of gratuitous services within the meaning of section 1.170A-1(g), Income Tax Regs. See, Wood v. Commissioner, 57 T.C. 220 (1971), affd. per curiam 462 F. 2d 691 (5th Cir. 1972). Similarly, while in Paris, Brussels, and Rome, Lillian Stevenson had no official capacity or duties. We therefore conclude that petitioners must include in their 1970 gross income half the value of the air fare received from the DAV, or $956.83. *200 Of the remaining amounts received by petitioners in 1970--$16,666.65 in monthly allowances, and $5,226.03 in reimbursements--we conclude they must include a total of $13,455.70 in income. [5]
In arriving at this figure, and indeed in arriving at the figures for 1971 and 1972, we have looked at the entire record before us, all facts, testimony, exhibits, and stipulations. After considering the entire record and after considering the discussion by the parties in their briefs, we have made certain estimates, and have arrived at as close an approximation as possible given the testimony, documentation, and other evidence before us, Cohan v. Commissioner, 39 F. 2d 540, 544 (2d Cir. 1930). In 1971, petitioners attended a state DAV convention in Hawaii. Although petitioner's wife *201 was present in a memorial service on the battleship Arizona, she was not a delegate at the Hawaii convention, nor was her presence required by the DAV. As stated in Saltzman v. Commissioner, 54 T.C. 722, 725 (1970), "it appears that in circumstances like these when there is a substantial personal benefit resulting from the trip, and the trip is not a necessary part of the charity's activities, a charitable deduction should not be allowed for its expenses." Consequently, we conclude one-half of the value of the air fare received, $474.92, must be included in petitioners' 1971 gross income. Applying the rule of Cohan v. Commissioner, supra, we conclude that of the remaining amount--$24,623.55 in monthly allowances, and $1,812.29 in reimbursements--petitioners must include $18,009.08 in their 1971 gross income. [6]
*202 In 1972, petitioners received $2,041.63 for travel allowances. Again, applying the rule in Cohan v. Commissioner, supra, we conclude petitioners must include $119.80 in gross income for 1972. The final issue we must resolve is whether any part of the deficiencies for each of the years in question was due to negligence or an intentional disregard of rules and requlations as described in section 6653(a).The burden of proof on this issue is again on the petitioners. See, e.g., Schroeder v. Commissioner, 40 T.C. 30, 34 (1963). Petitioners' argument on this issue is that the facts speak for themselves, and therefore the penalty is not applicable. The facts do speak for themselves: during 1970 and 1971 petitioners kept no records to help them account for how they spent their monthly expense allowance, and as a result, petitioners significantly underreported their income for those years. Failure to keep books and documents necessary to form a rational basis for the *203 income reported and the expenses deducted warrants the imposition of the negligence penalty. Marcello v. Commissioner, 380 F. 2d 499, 507 (5th Cir. 1967), affg. on this point a Memorandum Opinion of this Court. This is especially true in the case before us, where petitioners substantially understated their income. Switzer v. Commissioner, 20 T.C. 759, 766 (1953). Additionally, during each of the years before us, petitioners failed to report substantial amounts of interest income. Based on the entire record, we conclude petitioners have failed to carry their burden of proof, and are liable for the penalty imposed by section 6653(a) for 1970, 1971, and 1972. To reflect the foregoing, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise noted, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
2. "Excess expense allowance," a phrase used by the parties, is the amount by which monthly allowances, reimbursements, and airline tickets received exceed actual expenses incurred while away from home, performing gratuitous services.↩
3. Rev. Rul. 67-30, 1967-1 C.B. 9, reads: The taxpayer, a retired executive, performs gratuitous services for an organization of the type described in section 170(c) of the Internal Revenue Code of 1954 and receives a per diem allowance to cover his reasonable travel expenses, including meals and lodging, while away from home in the performance of such services. Held, under the circumstances the per diem allowance is includible in gross income to the extent it exceeds the taxpayer's actual travel expenses. Heldfurther↩, a deduction is allowable as a charitable contribution for his travel expenditures necessarily incurred incident to the rendition of the donated services only to the extent they exceed the amount of the per diem allowance.
4. One consequence of respondent's concession is that deductions under sec. 170 may be estimated using the rule in Cohan v. Commissioner, 39 F. 2d 540 (2d Cir. 1930). See, Cartan v. Commissioner, 30 T.C. 308, 321-322 (1958). In contrast, see the substantiation requirements under sec. 274(d) required for deductions under sec. 162↩ or sec. 212.
5. As noted in our findings of fact, on their 1970 income tax return, petitioners reported $2,800.00 as miscellaneous income to reflect excess expense allowances received. Therefore, their gross income for 1970 must be increased↩ by a total of $11,612:53 ($13,455.70, unreported allowances and reimbursements, plus $956.83, air fare, less $2,800.00, the amount previously reported).
6. Petitioners reported $2,440.00 on their 1971 income tax return as excess amounts received. Therefore, their gross income must be increased by $16,044.00 ($18,009.08 excess reimbursements and allowances, plus $474.92, air fare, less $2,440.00, amount previously reported).↩