GOLDIE O. BROWN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 8592–77, 11685–77.[1]     Filed October 24, 1979.

Goldie O. Brown, pro se.
*Marc A. Feller,* for the respondent.

HALL, *Judge:* Respondent determined deficiencies in petitioner's income tax of $493.07 for 1974 and $306.77 for 1975. The sole issue for decision is whether petitioner is entitled to deduct any of the costs of sending her son to military school as child care expenses.

### FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.

At the time of filing her petition, petitioner was a resident of Philadelphia, Pa.

Prior to 1972, petitioner resided with her son Albert in Montgomery County, Md. During this period, petitioner was employed by the Federal Government. In 1972, petitioner and

---

[1]These cases have been consolidated for purposes of trial, briefing, and opinion.

Albert moved to Philadelphia where petitioner enrolled Albert in the eighth grade at Wagner Junior High School (Wagner) for the 1972–73 school year. Albert was not able to adjust to the environment at Wagner. Unlike the Maryland school, Wagner was fraught with classroom disorders and teacher strikes. Gang fights took place after school, and petitioner was concerned for her son's safety. At the end of the school term, Albert told petitioner that he would rather be dead than return to Wagner in the fall.

Petitioner received some child support from Albert's father. Petitioner had no income of her own. Petitioner felt that she could not work while Albert was attending Wagner because she had to remain constantly prepared to pick him up if problems arose at the school.

Petitioner enrolled Albert in Valley Forge Military Academy (Valley Forge) in September 1973. At the time of enrollment, Albert was 13 years old. Valley Forge is located in Wayne, Pa., approximately 15 miles from Philadelphia. Albert attended Valley Forge from September 1973 through June 1974 (ninth grade) and from September 1974 through June 1975 (tenth grade). Like the other cadets at Valley Forge, Albert lived in a school dormitory during the academic year. During the summer of 1974, Albert attended summer school at Valley Forge as a day student. He did not attend summer school in 1975. Albert attended another high school after September 1975.

Valley Forge is primarily an educational institution. The school formally defines its goals as follows:

To educate young men fully prepared to meet their responsibilities, alert in mind, sound in body, considerate of others, and with a high sense of duty, honor, loyalty, and courage. To foster love of God and country, gentlemanly qualities, and high moral standards.

For the 1973–74 academic year, tuition at Valley Forge was $1,900, and the total cost, including room and board, uniforms, textbooks, laundry, and miscellaneous fees, was $3,715. For the 1974–75 academic year, tuition was $1,975, and the total cost was $3,840.

Petitioner began working in December 1973 as a secretary at the Federal Energy Administration in Philadelphia. On September 16, 1975, she was placed on disability due to health problems. Her annual salary at the Federal Energy Administration was approximately $10,000.

In order to finance Albert's attendance at Valley Forge, petitioner borrowed $2,715 in September 1973[2] and $2,800 in September 1974 from the Bryn Mawr Trust Co. The Bryn Mawr Trust Co. paid the amounts borrowed directly to Valley Forge. Additionally, Albert received a $1,000 scholarship for the 1974-75 school year.

On her 1974 and 1975 returns, petitioner claimed deductions of $2,600 and $1,800, respectively, for child care expenses. Petitioner's actual expenses for sending Albert to Valley Forge exceeded the amounts claimed. In his notice of deficiency, respondent disallowed the entire amount of the claimed deductions for both years. Respondent determined that petitioner was not entitled to the claimed deductions because the expenses were not incurred to enable petitioner to be gainfully employed. Respondent does not dispute that petitioner was entitled to her claimed dependency deduction for Albert during the years in issue.

## OPINION

The sole issue presented is whether petitioner is entitled to child care expense deductions under section 214[3] in 1974 and 1975 for any of the cost of sending her son to military school.

For years prior to 1974, section 214[4] allowed a limited deduction for amounts paid during the taxable year for the care of one or more dependents if such expenses were incurred to

---

[2] Albert's father was cosigner of the loan received from Bryn Mawr Trust Co. in September 1973.

[3] All statutory references are to the Internal Revenue Code of 1954, as in effect during the years in issue.

[4] For years after 1975, sec. 214 was repealed and replaced by a tax credit for dependent care expenses under sec. 44A. Secs. 504(b)(1) and 504(a)(1), Tax Reform Act of 1976, Pub. L. 94-455, 90 Stat. 1563. Sec. 214, as in effect during the years in issue, read in part as follows:

SEC. 214. EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT.

(a) ALLOWANCE OF DEDUCTION.—In the case of an individual who maintains a household which includes as a member one or more qualifying individuals (as defined in subsection (b)(1)), there shall be allowed as a deduction the employment-related expenses (as defined in subsection (b)(2)) paid by him during the taxable year.

(b) DEFINITIONS, Etc.—For purposes of this section—

(1) QUALIFYING INDIVIDUAL.—The term "qualifying individual" means—

(A) a dependent of the taxpayer who is under the age of 15 and with respect to whom the taxpayer is entitled to a deduction under section 151(e),

\*         \*         \*         \*         \*         \*         \*

(2) EMPLOYMENT-RELATED EXPENSES.—The term "employment-related expenses" means amounts paid for the following expenses, but only if such expenses are incurred to enable the taxpayer to be gainfully employed:

(A) expenses for household services, and

(B) expenses for the care of a qualifying individual.

enable the taxpayer to be gainfully employed during the taxable year.[5] (Sec. 214(b)(2).) Respondent contends that the record in this case fails to show that the claimed child care expenses were incurred for the purpose of enabling petitioner to be gainfully employed.

Section 1.214A–1(c)(1)(i), Income Tax Regs., provides:

Expenses are considered to be employment-related expenses only if they are incurred to enable the taxpayer to be gainfully employed and are paid * * * for the care of one or more qualifying individuals. The expenses must be incurred while the taxpayer is gainfully employed or is in active search of gainful employment. * * * An expense will not be considered to be employment-related merely because it is incurred while the taxpayer is gainfully employed. Whether the purpose of the expense is to enable the taxpayer to be gainfully employed depends upon the facts and circumstances of the particular case. * * *

As we view the facts, petitioner had two motivations in putting Albert in Valley Forge—she could not work unless he were in boarding school, and she wanted a better school for her son than the public school he had attended.

Petitioner had worked before she moved to Philadelphia. However, after she moved to Philadelphia, she could not and did not work while Albert attended Wagner because she had to remain constantly prepared to pick him up if problems arose at school. She solved this problem by putting him in boarding school, and shortly after he started Valley Forge (September 1973), she sought and obtained a job (December 1973) which she kept until placed on physical disability in September 1975.

Petitioner was obviously interested in her son's education, safety, and happiness. He felt he was in constant danger at Wagner, and he did not want to return to that school. She hoped her son would be safe and happy at Valley Forge and would get an excellent education.

The regulations in subparagraph 1.214A–1(c)(5) give several examples to illustrate the application of section 1.214A–1(c), Income Tax Regs. Example (2) is as follows:

The taxpayer has a dependent child 10 years of age who has been attending public school. The taxpayer who has been working part time is offered a position involving full-time employment which she can accept only if the child is placed in a boarding school. The taxpayer accepts the position, and the child

---

[5]Sec. 44A(c)(2) limits the child care credit to expenses incurred "to enable the taxpayer to be gainfully employed."

is sent to a boarding school. The expenses paid to the school must be allocated between that part of the expenses which represents care for the child and that part which represents tuition for education. The part of the expense representing care of the child is considered to be incurred for the purpose of permitting the taxpayer to be gainfully employed.

The example suggests that, regardless of other motivations the parent may have had in sending the child to boarding school, if the parent could not have accepted the job without having sent the child to boarding school, she is deemed to have incurred the expense in order to be able to accept gainful employment. The "care" portion of the expenses in such case is deductible under section 214. We adopt such a standard here. Since one of petitioner's reasons for sending her son to boarding school was to be able to take a job, and since she could not have taken a job without such child care arrangement, she is entitled to a child care deduction for some part of the cost of sending him to Valley Forge. We adopt, in other words, a "but for" test. If the care was required to permit the taxpayer to work, and if *one* motive for obtaining the care was to permit gainful employment, the concurrent existence of other motives will not cause the expenditure to fail the statutory test. The employment motive must be present. It need not be exclusive or even dominant.

There is the further question whether a subjective or objective test of necessity is applicable. Petitioner considered herself unable to work while her son was at Wagner. However, no doubt many Wagner students did have working mothers. It was not objectively impossible to be employed while a child was at Wagner. However, we do not believe that the statute requires us to test the correctness of the parent's conclusion that child care is required to obtain employment, but only the sincerity of that conclusion. Different parents will apply different standards for what risks they are willing to put their children to. One parent may feel a 13-year-old boy could be left alone at home after school hours; another would disagree. The statute requires the prescribed purpose; it does not impose a test of objective necessity.

That brings us to our next question, namely, how much of the cost ($3,715 for the academic year 1973–74 and $3,840 for the academic year 1974–75) is petitioner entitled to deduct as child care.

Regulations section 1.214A–1(c)(3) states in relevant part:

The primary purpose of expenses for the care of a qualifying individual must be to assure that individual's well-being and protection. Not all benefits bestowed upon such an individual will be considered as provided for his care. Accordingly, amounts paid to provide food, clothing, or education are not expenses paid for the care of a qualifying individual. However, where the manner of providing care is such that the expense which is incurred includes expense for other benefits which are inseparably a part of the care, the full amount of the expense will be considered to be incurred for care. Thus, for example, the full amount paid to a nursery school in which a qualifying child is enrolled will be considered to be for the care of the child, even though the school also furnishes lunch, recreational activities, and other benefits. Educational expenses incurred for a child in the first or higher grade level are not expenses incurred for the care of one or more qualifying individuals. * * *

We conclude from this that that portion of the cost of keeping Albert at Valley Forge which goes toward his education (as opposed to his "well-being and protection") is not deductible as child care. However, incidentials that go with providing well-being and protection, such as room, board, and supervision before and after the normal school day, should be deductible. Unfortunately, petitioner has given us no way to make an allocation of allowed expenses.

Respondent, while urging that no deduction should be allowed, contends that if any deduction is allowable at all, no more than $650 in 1974 and $705 in 1975 represents expenses for the care of petitioner's son. Respondent does not enlighten us as to how he arrived at these numbers. In view of petitioner's failure of proof and respondent's concession, we hold that petitioner is entitled to deduct as section 214 expenses $650 in 1974 and $705 in 1975.

*Decision will be entered under Rule 155.*

Reviewed by the Court.

DRENNEN, *J.,* dissenting: I respectfully disagree with the standards used by the majority in reaching their conclusion and with the conclusion reached as a result thereof.

First, the majority concludes that if one motive for sending the child to boarding school was to permit the mother to be gainfully employed, the concurrent existence of other motives will not cause the expenditure to fail the statutory test. The employment motive must be present, but it need not be exclusive or even dominant. In my opinion, the motive to permit the

mother to be gainfully employed should be the primary or dominant test of whether the expenses are deductible. The statute defines "employment-related expenses" as certain specified expenses "but *only* if such expenses are incurred to enable the taxpayer to be gainfully employed." (Emphasis added.) I do not interpret the statute, nor the purpose behind it, to allow a deduction for such expenses when only one of several perhaps more cogent reasons for incurring the expense is to permit the parent to work. Such interpretation is an open invitation to a parent to send a child to a private school and deduct a part of the expense of doing so. If a deduction for private school tuition is to be allowed, it should be specifically allowed by Congress.

Second, the majority would employ a subjective test to determine whether it was *necessary* for the mother to incur the boarding school expense to permit her to be gainfully employed. Under this test, the only question is whether the mother was *sincere* in her conclusion that the expense was required to permit her to obtain employment, rather than whether her conclusion was *reasonable* under the circumstances. I am not concerned with either the reasonableness or the sincerity of this mother in this particular case, but I believe the standard should be reasonableness rather than sincerity alone.

SIMPSON and STERRETT, *JJ.*, agree with this dissenting opinion.

TANNENWALD, *J.*, dissenting: The difficulties encountered by Albert at Wagner suggest that the petitioner may have first decided to remove him from that school and to place him in a school like Valley Forge and that her work was undertaken in order to implement that purpose. If such were the case, I do not think that the statutory test of "expenses * * * incurred to enable the taxpayer to be gainfully employed" (see sec. 214(b)(2)) would be met. There is no indication in the findings of fact or the opinion of the majority as to how this essentially factual question would be resolved—a task presumably for the trier of the facts.

The legislative history of section 214 makes it clear that expenses such as are involved herein "must be for the purposes [sic] of permitting the taxpayer to follow a gainful employment." See H. Rept. 1337, to accompany H.R. 8300 (Pub. L. 591),

83d Cong., 2d Sess. 30 (1954). See also H. Rept. 1337, *supra* at A60–A61; S. Rept. 1622, to accompany H.R. 8300 (Pub. L. 591), 83d Cong., 2d Sess. 220 (1954). Similar language is contained in section 1.214A–1(c)(1)(i), Income Tax Regs., which provides:

An expense will not be considered to be employment-related merely because it is incurred while the taxpayer is gainfully employed. Whether the purpose of the expense is to enable the taxpayer to be gainfully employed depends upon the facts and circumstances of the particular case.

See also the last sentence of section 1.214A–1(c)(3)(ii), Income Tax Regs.

In short, the threshold issue is whether petitioner incurred the expense of sending Albert to Valley Forge to enable her to work, or whether she worked because he was going to that school. Cf. *Limpert v. Commissioner*, 37 T.C. 447, 448, 450 (1961) (wherein we found that the sole reason that the taxpayer's mother resided with the taxpayer was to care for the child and thus enable the taxpayer to be gainfully employed).[1] *Jungreis v. Commissioner*, 55 T.C. 581, 593 (1970) (concurring opinion). See A. Feld, "Deductibility of Expenses for Child Care and Household Services: New Section 214," 27 Tax L. Rev. 415, 429 (1972). In an analogous situation, the taxpayer has been required to show that the expenses for which a deduction was claimed would not have been incurred in any event. E.g., *Fausner v. Commissioner*, 413 U.S. 838 (1973) (expenses of driving to work treated as personal expenses where taxpayer would have driven to work anyway even if he had not transported job-related tools and materials). Compare *Zolnay v. Commissioner*, 49 T.C. 389 (1968), and *Reese v. Commissioner*, 45 T.C. 407 (1966), affd. per curiam 373 F.2d 742 (4th Cir. 1967) (wherein it was determined that there was a threshold question as to whether payments to the taxpayer were a "scholarship" or "fellowship" which had to be answered before sec. 117 became applicable).

I recognize that my approach is a strict one and that it can be argued that my logic may be equally applicable to situations where child care expenses are claimed for household help. But the fact of the matter is that only the issue of boarding school expenses is before us, and I therefore leave to another day the extent to which my approach should be applied in other cases

---

[1]See also *Bye v. Commissioner*, T.C. Memo. 1972–57.

involving child care expense should respondent choose to argue that the threshold question I have elucidated should be extended beyond the boarding school situation. In this connection, I note that respondent's existing regulations take a liberal view in respect of child care expenses where household help is involved.

DRENNEN, SIMPSON, and STERRETT, *JJ.*, agree with this dissenting opinion.