CONSTANCIO BABILONIA and CLEO BABILONIA, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Babilonia v. Commissioner
Docket Nos. 11168-77, 13856-78.
United States Tax Court
T.C. Memo 1980-207; 1980 Tax Ct. Memo LEXIS 380; 40 T.C.M. (CCH) 485; T.C.M. (RIA) 80207; June 18, 1980, Filed Brian J. Seery, for the petitioners. Arthur A. Oshiro, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge:[1] In these consolidated cases, respondent determined deficiencies in petitioners' Federal income taxes and additions to tax under section 6651(a) [2] as follows: Addition to Tax [3]
Docket No.
Year
Deficiency
(sec. 6651(a))
11168-77
1974
$ 540
0
1975
606
0
13856-78
1976
1,155
$ .80
*382 The issues presented for decision are: 1. Whether petitioners' unreimbursed expenditures for skating lessons and attendant travel costs for their daughter to prepare her for various World Championship and Olympic competitions are deductible under section 170 as charitable contributions; and 2. Whether petitioner Cleo Babilonia's unreimbursed travel expenses incurred in accompanying her daughter to various World Championship and Olympic competitions are deductible under section 170 as charitable contributions. FINDINGS OF FACT Petitioners Constancio Babilonia and Cleo Babilonia, husband and wife, were legal residents of Mission Hills, California, when they filed their petitions in these cases. Petitioners filed joint Federal income tax returns for 1974, 1975, and 1976, with the Internal Revenue Service Center at Fresno, California. Petitioners are the parents of Tai Babilonia (Tai) who was born on September 22, 1959. During the years in question, Tai was a world class pairs figure skater and a member of the United States World Team (World Team); and in 1976, she was a member of the United States Olympic Team (Olympic Team). Throughout that period, Tai was also a member *383 of the Los Angeles Figure Skating Club and the United States Figure Skating Association (the Association). The Association constitutes the governing body of amateur figure ice skating in the United States and it sanctions figure skating competitions on the regional, sectional, and national levels. The top three skaters in each division at the regional level advance to the sectional level, and the top three finalists in each division at the sectional level move ahead to the national competition. The World Team is then selected from the three finalists in each division in the National Championships. In January 1974, Tai and her partner, Randy Gardner, won the Pacific Coast Championship held in Portland, Oregon. By finishing first at this event, Tai and her partner were entitled to compete in the National Championships held in Providence, Rhode Island, in February of that year. Tai and her partner finished second in the national competition which ended on February 9, 1974, and due to their second place finish, they were chosen as members of the World Team. At that time, Tai and her partner were the youngest paid ever to represent the United States in international skating competition. *384 After Tai made the World Team, petitioners incurred the following expenses in order to prepare Tai for the World Championships: (1) $294 for skating lessons, which included a special fee of $150 for lessons at the World Championships, and (2) $40 for driving Tai to and from the ice rink where she trained. The World Team practiced at Innsbruck, Austria, from February 25 through March 1, 1974. The World Championships were held in Munich, Germany, from March 1 to March 10, 1974. Tai and her partner finished tenth in the competition. Petitioner Cleo Babilonia (Mrs. Babilonia) accompanied Tai to Innsbruck, Austria, and Munich Germany; and in so doing, she incurred the following expenditures: (1) $683 for airfare; (2) $95 in Innsbruck and $174 in Munich for hotel accomodations; and (3) $195 for meals for herself and Tai. In January 1975, Tai and her partner placed first in the Pacific Coast Championships which were held in San Diego, California. Tai and her partner placed second in the National Championships which were held from January 29 to February 1, 1975, in Oakland, California. Due to their second place finish, Tai and her partner were selected as members of the World *385 Team. After Tai made the 1975 World Team, petitioners spent $255 for skating lessons for Tai in preparation for the World Championships. Included in the $255 was a special fee of $100 for lessons at the World Championships. Also during this period, petitioners expended $99 in driving Tai home from the National Championships as well as to and from the ice rink where she trained for the World Championships. The 1975 World Championships were held in Colorado Springs, Colorado. The World Team's official practice was also held in Colorado Springs, Colorado. However, in order to acclimate herself to the higher altitude, Tai went to Denver, Colorado, from February 25 to February 28, 1975, to practice prior to the official team practice which was subsequently held on February 28 to March 3, 1975. The World Championships were held on March 4 through March 9, 1975. Tai and her partner finished tenth in that competition. Mrs. Babilonia accompanied her daughter to Denver and Colorado Springs in 1975. During this time, she incurred expenses of $238 for airfare, approximately $75 for lodging in Denver for herself and Tai, and approximately $45 for meals for herself and Tai. In *386 1976, Tai and her partner won the United States National Championship and again were chosen as members of the World Team. because 1976 was an Olympic year, Tai and her partner were also selected as members of the United States Olympic Team. After Tai made the Olympic and World Teams, petitioners spent $214 for skating lessons for Tai in preparation for the Olympics.During this time, petitioners also incurred expenses of $25 in driving Tai to and from the ice rink where she trained for the Olympics. Between January 21 and March 7, 1976, Tai was traveling away from home as a member of the World and Olympic Teams. As a member of the Olympic Team, Tai traveled to New York; Garmish, West Germany, the location of the official team practice; and Innsbruck, Austria, the site of the 1976 Olympic Games. Tai and her partner finished fifth in the Olympics, and were the youngest pairs skating team to compete in those games. As a member of the World Team, Tai traveled from the Olympics in Innsbruck, Austria, to team practices held in Munich, West Germany, and Helsinki, Finland.The World Championships were held in Gotenburg, Sweden. Mrs. Babilonia accompanied Tai to New York and to Europe *387 for the Olympics, World Championships, and team practices. During this period, she incurred expenses of $1,928 for airfare, $1,098 for hotel rooms, and approximately $660 for meals for herself and Tai. While attending the World Championships and concomitant official team practices during each of the years in question, Tai's expenses for meals, lodging, and transportation were paid by the United States Figure Skating Association Memorial Fund (Memorial Fund) through the Association. The Memorial Fund gives financial aid to members of the Association to help them attain levels of skill so as to achieve international prominence. The Memorial Fund is also an organization described in section 501(c)(3), contributions to which are deductible as provided in section 170. As a member of the Olympic Team in 1976, Tai's expenses for meals, lodging, and transportation were paid by the United States Olympic Committee (USOC). The USOC enables amateur athletes to attend and compete in the Olympics by financing the United States Olympic Team's participation in the Games. The USOC is also an organization, defined in section 501(c)(3), contributions to which are deductible as specified in *388 section 170. On their tax returns for each of the years in question, petitioners deducted, as charitable contributions to the Association and the USOC, their unreimbursed expenses for skating lessons and attendant travel costs for Tai to prepare her for various World Championships and the Olympics. However, in an amendment to the petition for the years 1974 and 1975, petitioners' counsel alleged that the contributions with respect to the World Championships were, in fact, made to the Memorial Fund rather than to the Association. Respondent disallowed petitioners' deductions for lessons and travel on the ground that such expenses were personal in nature and thus nondeductible under section 262. Also during each of the years in question, petitioners deducted Mrs. Babilonia's unreimbursed expenses in accompanying Tai to the three World Championships and the Olympics as charitable contributions to the Memorial Fund and the USOC. Mrs. Babilonia accompanied Tai due to petitioners' parental concern that Tai was too young to travel to the World Championship and Olympic competitions without a parent. Respondent disallowed petitioners' deductions for Mrs. Babilonia's costs in accompanying *389 Tai also on the basis that such expenses were personal and nondeductible under section 262. OPINION Petitioners argue that their unreimbursed expenditures for skating lessons and travel for Tai to prepare her for World Championship and Olympic competitions were made incident to the rendition of services by Tai (i.e., skating at competitions) to the Memorial Fund and the USOC and that, therefore, the expenditures are deductible as charitable contributions. Analogizing Tai's situation to that of a delegate who performs services on behalf of a charity that he represents at a convention, petitioners contend that Tai rendered services to the exempt organizations herein merely by participating as their chosen representative at the various skating competitions. In this connection, they argue that the lessons and travel enabled Tai to compete at the events by helping her to perfect specific routines to be used at the World Championship and Olympic competitions. Similarly, petitioners contend that their unreimbursed expenses for Mrs. Babilonia in accompanying Tai are deductible as charitable contributions because they were incurred incident to the rendition of services by chaperoning *390 her and, indirectly, incident to the rendition of services by Tai to the organizations. [4]/ Due to their belief that Tai's youth and immaturity made the chaperones provided by the organizations herein inadequate, petitioners claim that Mrs. Babilonia's presence enable Tai to attend and compete at the events. Respondent contends that petitioners' expenditures for Tai's skating lessons and travel, and for Mrs. Babilonia in accompanying Tai, were primarily for Tai's benefit and were, therefore, personal and nondeductible under section 262. In addition, respondent argues that such expenses were not made incident to the rendition *391 of services by Tai or Mrs. Babilonia to exempt organizations as required by section 1.170A-1(g), Income Tax Regs., since Tai would have been able to compete and attend the events herein without the lessons, travel, or attendance of her mother. We agree with respondent. Because the Memorial Fund and the USOC are organizations which qualify under section 170(c)(2), a contribution or gift "to or for the use of" either is deductible as a charitable contribution. With respect to a contribution of services, section 1.170A-1(g), Income Tax Regs., provides: No deduction is allowable under section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without gfeneral utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services *392 are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible. For the purposes of this paragraph, the phrase "while away from home" has the same meaning as that phrase is used for purposes of section 162 and the regulations thereunder. Petitioners have the burden of proving that their expenses are deductible under section 170. Tate v. Commissioner,59 T.C. 543, 550 (1973); Saltzman v. Commissioner,54 T.C. 722, 724 (1970). In order to be deductible under section 1.170A-1(g), Income Tax Regs., the out-of-pocket expense must be directly connected with and solely attributable to the rendition of gratuitous services to an exempt organization. If the expenditure is made primarily for the personal benefit of the taxpayer, it is not a deductible charitable contribution. Expenses which are incurred incident to the rendition of services to a charitable organization often have a dual character in that they benefit both the charity *393 and the taxpayer. In such cases, the presence of a substantial, direct, personal benefit to the taxpayer or to someone other than the charity is fatal to the claim for a charitable contribution. Tate v. Commissioner,supra at 550; Seed v. Commissioner,57 T.C. 265, 275-276 (1971); Saltzman v. Commissioner,supra at 724. In the present case, we conclude that the principal beneficiaries of the expenses in question were petitioners and Tai. It is possible that Tai's performances may have indirectly benefited the several exempt organizations with which she was connected. However, her performances primarily helped her to attain recognition, fame, personal satisfaction, and a future career in professional skating through participation in international competitions, and any benefits to the Memorial Fund or the USOC were merely incidental to those personal benefits. Accordingly, petitioners' expenses for skating lessons and attendant travel for Tai in preparation for those performances, after she made the World and Olympic Teams, were incurred primarily to maintain and improve her skating ability and chances of winning at *394 the competitions. As such, the lessons and travel herein conferred a substantial, direct, personal benefit to Tai which is fatal to petitioners' claim for a charitable contribution. DeJong v. Commissioner,309 F.2d 373 (9th Cir. 1962), affg. 36 T.C. 896 (1961); Tate v. Commissioner,supra;Seed v. Commissioner,supra;Fausner v. Commissioner,55 T.C. 620 (1971). Petitioners also contend that Mrs. Babilonia's expenses in accompanying Tai to the various international competitions are deductible under section 1.170A-1(g), Income Tax Regs., because they were incurred incident to the rendition of services by Tai to the various organizations. Since we have held that Tai was performing at the competitions primarily for her own benefit and was not rendering services to the Memorial Fund or the USOC, it is clear that the expenses are not deductible on that ground. Furthermore, it is our conclusion that the expenses are not deductible on the basis that they were incurred incident to the rention of services by Mrs. Babilonia to the organizations. Mrs. Babilonia *395 traveled with Tai to the various international competitions primarily in order to look after her own daughter rather than to act as a team chaperone. By accompanying Tai, Mrs. Babilonia was relieved of the worry of her daughter traveling alone, afforded the opportunity of European travel, and given the chance to see her daughter perform at the World Championship and Olympic competitions. Tai testified that she benefited from her mother's presence by skating better at the competitions and by having someone to supervise her personal grooming, diet, and skating practices. The presence of such substantial, direct, and personal benefits render Mrs. Babilonia's travel costs non-deductible under section 1.170A-1(g), Income Tax Regs.Tate v. Commissioner,supra;Seed v. Commissioner,supra;Saltzman v. Commissioner,supra.
Relying on our recent decision in Brown v. Commissioner,73 T.C. 156 (1979), petitioners argue that they are entitled to a charitable deduction because they sincerely believed that Tai was too young and immature for the team leaders to be adequate chaperones. *396 However, that case arose under an entirely different section. We think that petitioners' reliance in the instant case on the subjective test of necessity for a child care expense discussed in Brown is misplaced. We have no reason to doubt the sincerity of petitioners' belief that it was necessary for Mrs. Babilonia to accompany Tai to the competitions, but it does not follow that expenses motivated by personal family concerns are deductible as charitable contributions. Finally, petitioners argue that Mrs. Babilonia's expenditures in accompanying Tai were necessary by analogizing their situation to cases under section 213 which have allowed handicapped taxpayers to deduct expenditures incurred by a parent or nurse to enable them to obtain medical treatment. The argument is without merit. To reflect the foregoing, Decisions will be entered for the respondent. Footnotes
1. / This case was heard by Judge William H. Quealy. Due to Judge Quealy↩'s resignation from the Court, the case was reassigned. 2. All section references are to the Internal Revenue Code of 1954, as in effect during the tax years in issue, unless otherwise noted.↩
3. Petitioners have conceded that they are liable for the late filing penalty under sec. 6651(a) for the year 1976, thus leaving only the amount of that penalty in issue.↩
4. / As an alternative ground for their position, petitioners make the novel argument that if an expense reimbursed by a sec. 170(c) organization would not constitute income to the recipient, then it follows that such an expense when unreimbursed should constitute a deduction to the individual. Petitioners' argument is without merit, however, since the test for determining whether a reimbursed expense is income to a taxpayer is different from the test of whether an unreimbursed expense is deductible under sec. 170↩ and the regulations thereunder.