EDITH W. ZOLTAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 18977–80.     Filed September 20, 1982.

Edith W. Zoltan, pro se.
*David D. Dahl,* for the respondent.

STERRETT, *Judge:* By notice of deficiency dated July 11, 1980, respondent determined deficiencies in petitioner's Federal

income taxes for the taxable years 1977 and 1978 in the amounts of $221 and $83, respectively.[1] After concessions, the sole issue for decision is whether certain expenses incurred by petitioner during the years in question constitute child care expenses within the meaning of section 44A, I.R.C. 1954.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and exhibits attached thereto are incorporated herein by this reference.

Petitioner Edith W. Zoltan resided in Shaker Heights, Ohio, at the time of filing the petition herein. Petitioner and her husband, Stephen I. Zoltan, filed joint Federal income tax returns with the Office of the Director, Internal Revenue Service.[2]

During 1977 and 1978, petitioner was employed as an accountant by a public accounting firm, where she was required to work from 8 a.m. to 5 p.m., 5 days a week. Because she lived approximately 1 hour from her place of employment, petitioner generally left her home at 7 a.m. and returned at 6 in the evening. Thus, her job required her to be away from home for approximately 55 hours per week.

Petitioner's son, Paul Zoltan, was 11 years old in 1977. It is agreed that he is a qualifying individual with respect to whom child care expenses incurred by petitioner can give rise to a credit pursuant to section 44A. See sec. 44A(c)(1)(A).

On her 1977 income tax return, petitioner calculated that she had incurred $1,891 in employment-related expenses with respect to her son. She claimed a credit for child and dependent care expenses in the amount of $378. Of the total child care expenses claimed, $711 was paid to employ Sally Sadler to care for petitioner's son during the year. Respondent did not dispute the treatment of this amount. The remaining

---

[1] In addition, respondent determined that petitioner was liable for the excise tax on excess contributions pursuant to sec. 4973 in the amount of $2.22. Respondent has since conceded that petitioner is not liable for such tax.

[2] The petition herein was filed by Mrs. Zoltan only.

$1,180 was paid to Camp Adanac, a summer camp located in Canada where Paul Zoltan spent 8 weeks.[3] The $1,100 summer camp expenses remaining in dispute covered various expenses incurred by Paul Zoltan, including expenses for food, lodging, and tuition. The camp program provided instruction in swimming, archery, and various other activities in an unstructured fashion.

On her 1978 tax return, petitioner calculated $897 in child care expenses; of this, $431 was paid to Sally Sadler and was allowed by respondent. Of the remaining $466, $116 was paid by petitioner to Joseph Katzenstein to cover the cost of a school trip taken by Paul Zoltan from Cleveland, Ohio, to Washington, D.C., during his Easter vacation. Included in the payment of the $116 was the cost of transportation and lodging incurred by petitioner's son. The remaining $350 was paid by petitioner to her daughter, Jeanne L. Windsor, for taking care of Paul Zoltan during his 8-week stay in France.[4] Ms. Windsor, who was 22 years old as of October 1977, was in France on a Fulbright Fellowship during the period in question.[5]

Petitioner stated that she sent her son to summer camp so that he would be taken care of while he was out of school. Had she not sent him to camp, petitioner would have sought alternative care for her son for her 55-hour-per-week absence from home. Her alternatives included sending him to a 6-hour day camp at a cost of $400, plus hiring a housekeeper for the remaining 5 hours per day at approximately $3 per hour.

---

[3]Petitioner claimed only $1,180 on her return. However, the actual amount paid was $1,230. Of this amount, it has been agreed that $130 represented transportation costs which do not qualify as child care expenses. Therefore, the amount presently in dispute is $1,100.

[4]Petitioner stated that she paid her daughter $10 per day for the care of her son during his stay in France. In addition, $10 a day allegedly was paid to offset expenses incurred by Paul while staying with his sister. This per diem amount was only paid for a 5-week period, since petitioner was on vacation in France for 3 weeks out of the 8-week period in question. Thus, for 5 weeks, or 35 days, petitioner paid $10 a day for the care of her child.

[5]Little evidence was presented with respect to petitioner's husband, Mr. Zoltan. Although his W-2 forms for both 1977 and 1978 indicate the same home address as petitioner's, his employer during 1977 was located in Rolling Meadows, Ill., and during 1978, in Cleveland, Ohio. Thus, we assume that Mr. Zoltan, who was employed as an engineer during those years, was absent from home for employment purposes for at least the same 55-hour period that petitioner was away from home.

Thus, her total cost under this alternative would have been approximately $1,000.[6] As a further alternative, petitioner could have hired a full-time housekeeper to care for her child. This would have cost approximately $1,320.[7]

In his notice of deficiency, respondent disallowed the child care credit for expenses incurred with respect to the summer camp, the trip to Washington, and the trip to France.

## OPINION

We must decide whether the disputed expenses incurred by petitioner constitute "employment-related expenses" as defined in section 44A.[8] Section 44A(c)(2)(A) provides as follows:

SEC. 44A. EXPENSES FOR HOUSEHOLD AND DEPENDENT CARE SERVICES NECESSARY FOR GAINFUL EMPLOYMENT.

(2) EMPLOYMENT-RELATED EXPENSES.

(A) IN GENERAL.—The term "employment-related expenses" means amounts paid for the following expenses, but only if such expenses are incurred to enable the taxpayer to be gainfully employed for any period for which there are 1 or more qualifying individuals with respect to the taxpayer:

(i) expenses for household services, and

(ii) expenses for the care of a qualifying individual.

With respect to all of the expenses in question, the precise issue for our consideration is whether the expenses were incurred to permit petitioner to work, and whether they were incurred for the "care" of petitioner's son within the meaning of section 44A(c)(2)(A)(ii).[9]

We have no difficulty with the first issue. We accept petitioner's testimony, and so find, that she incurred the expenses at issue in order to permit her to work. We hold that this was her dominant motive.

The issue with respect to "care" is somewhat more difficult. To qualify as "expenses for the care of a qualifying individual"

---

[6]Computed as follows: $400, plus $3 per hour times 5 hours per day times 5 days per week times 8 weeks.

[7]Computed as follows: $3 per hour times 11 hours per day times 5 days per week times 8 weeks.

[8]Sec. 44A was amended by sec. 124 of Pub. L. 97–34, 95 Stat. 172, 197, Aug. 13, 1981, effective for the taxable years beginning after Dec. 31, 1981.

[9]None of the disputed expenses constitute household expenses within the meaning of sec. 44A(c)(2)(A)(i).

under section 44A(c)(2)(A), the primary purpose of the care must have been to assure petitioner's son's well-being and protection. Sec. 1.44A–1(c)(3)(i), Income Tax Regs. The resolution of this issue depends upon the facts and circumstances of the particular case. Sec. 1.44A–1(c)(1)(i), Income Tax Regs. Normally, "amounts paid to provide food, clothing, or education" do not qualify unless they are "incident to and inseparably a part of the care. * * * Thus, for example, the full amount paid to a nursery school in which a qualifying child is enrolled is considered as being for the care of the child, even though the school also furnishes lunch and educational services." Sec. 1.44A–1(c)(3)(i), Income Tax Regs.

Petitioner maintains that the primary reason that she sent her son away to summer camp was to assure his well-being and protection. The summer camp alternative seemed to be the most feasible one available to petitioner. She stated that it would have been difficult to find a full-time housekeeper to care for her son 55 hours a week. Furthermore, such choice would have been more expensive than the cost of summer camp. A second option would have required her to hire someone to care for her child for 5 hours each day and to send him to a day camp for the other 6. Though this alternative might have proven somewhat less expensive than summer camp, it also would have required petitioner to arrange for child care services before and after day camp and to arrange for the daily transportation of her son to and from day camp and possibly of the hired help to and from work. Moreover, "The manner of providing the care need not be the least expensive alternative available to the taxpayer." Sec. 1.44A–1(c)(3)(ii), Income Tax Regs.

We believe that at least part of the summer camp expense qualifies as "expenses for the care of a qualifying individual." On the facts before us, we fail to find a material distinction between the instant case and example (2) of section 1.44A–1(c)(6), Income Tax Regs., wherein the portion of a taxpayer's cost incurred to send her child to boarding school that represented care qualified as a child care expense.[10] In the

---

[10]Example (2), sec. 1.44A–1(c)(6), Income Tax Regs., provides as follows:

Sec. 1.44A–1. Expenses for household and dependent care services necessary for gainful employment.— * * *

example, the taxpayer's child had to be placed in a boarding school because the taxpayer's job required her to be away from home before or after normal school hours. This portion of the regulations can be said to be twice blessed, for it qualifies as a legislative regulation, sec. 44A(g), and as a beneficiary of subsequent legislative approval.[11] Here, petitioner was forced to choose a full-time summer camp over day camp for the identical reason.

We find that petitioner's principal purpose in sending her child away to camp was to provide for his well-being and protection. Moreover, the form of care she chose was reasonable under the circumstances, especially in light of the fact that the cost of the summer camp was virtually as inexpensive as any of the various other alternatives from which she had to choose and less expensive than the most obvious alternative.

A question remains, with respect to the summer camp expense, whether an allocable portion of such expense was not incurred for the care of Paul Zoltan and therefore does not qualify under section 44A(c)(2)(A). Section 1.44A–1(c)(5), Income Tax Regs., provides that an allocation must be made between the qualifying and nonqualifying elements of an expenditure.

This issue focuses on the apparent tension between the requirement that expenses be allocated under section 1.44A–1(c)(5), Income Tax Regs., and the rule that expenses that are "incident to and inseparably a part of the care" qualify as employment-related expenses under section 1.44A–1(c)(3)(i),

* * * * * * *

*Example (2).* The taxpayer has a dependent child 10 years of age who has been attending public school. The taxpayer, who has been working part time, is offered a position involving full-time employment which she can accept only if the child is placed in a boarding school. The taxpayer accepts the position and the child is sent to a boarding school. The expenses paid to the school must be allocated between that part of the expenses which represents care for the child and that part which represents tuition for education. The part of the expense representing care of the child is incurred for the purpose of permitting the taxpayer to be gainfully employed.

[11]Sec. 44A(g) provides that "The Secretary shall prescribe such regulations as may be necessary to carry out the purposes of this section." In such case, where Congress has explicitly directed the Secretary to prescribe regulations, such regulations are entitled to greater weight than if such authority is conferred only generally pursuant to sec. 7805(a). See *United States v. Vogel Fertilizer Co.*, 455 U.S. 16 (1982).

Example (2), sec. 1.44A–1(c)(6), Income Tax Regs., materially echoes the examples contained under sec. 214, the predecessor of sec. 44A. See examples (*1*), (*3*), and (*5*), sec. 1.214–1(f)(5), Income Tax Regs.

Income Tax Regs. We find that the summer camp provided minimal educational services (see sec. 1.44A–1(c)(5), Income Tax Regs.), and that the food and any recreational services provided to petitioner's son were incident to and inseparably a part of his care. Thus, no allocation is necessary, and the full $1,100 qualifies.

In *Brown v. Commissioner*, 73 T.C. 156 (1979), this Court found that the taxpayer enrolled her son in boarding school to enable her to seek and hold gainful employment. We held that the portion of the boarding school costs allocable to child care rather than to education was deductible under section 214(b)(2), the forerunner to section 44A. In defining "child care" we said, "incidentals that go with providing well-being and protection, such as room, board, and supervision before and after the normal school day, should be deductible." *Brown v. Commissioner, supra* at 161. Respondent's allocation with respect to the costs attributable to educational services was sustained due to petitioner's failure of proof. *Brown v. Commissioner, supra* at 161. The allocation was made pursuant to the guidelines of section 1.214A–1(c)(3), Income Tax Regs., which is mirrored in section 1.44A–1(c)(3)(i), Income Tax Regs.

Unlike the facts in *Brown*, however, there were no significant educational services provided to petitioner's son at Camp Adanac.[12] Thus, no allocation with respect to such expenses is required. See sec. 1.44A–1(c)(5), Income Tax Regs.

As a last resort, respondent contends that petitioner must prorate the expenses to reflect the fact that petitioner only was away from home for employment purposes for a total of 55 hours a week. Thus, respondent would limit qualifying expenses to 55/168, or approximately 33 percent. We disagree. Once the decision was made by petitioner to send her son to camp, she had no choice but to pay for 24-hour care, 7 days a

---

[12]In so holding, we find that any instruction rendered to petitioner's son at Camp Adanac does not rise to the level of "educational services" as that phrase is to be construed. See sec. 1.44A–1(c)(3)(i), Income Tax Regs.; example (2), sec. 1.44A–1(c)(6), Income Tax Regs.; *Brown v. Commissioner*, 73 T.C. 156, 161 (1979). Cf. sec. 1.151–3(c), Income Tax Regs. The services provided to Paul Zoltan at Camp Adanac were more in the nature of recreational supervision in an unstructured environment. We think that in this instance such services fall within the scope of "care" rather than education. If the camp had been a specialized camp, such as a golf camp or a computer camp, our conclusion might be different. There is no general requirement under sec. 44A(c)(2)(A)(ii) that the child be bored stiff in order for the expenses rendered for his care to qualify for the credit.

week. Having found that the dominant motivation behind the decision was to permit petitioner to work, we conclude that the constant care of her son was inseparably part of the type of care giving rise to the qualifying expenses. See sec. 1.44A–1(c)(3)(i), Income Tax Regs. We note that example (2) of section 1.44A–1(c)(6), Income Tax Regs., requires no allocation between the taxpayer's working and nonworking hours where the subject expenses are paid to send the taxpayer's son to boarding school. Nor was such an allocation required by the Court in *Brown v. Commissioner, supra* at 161, in the portion of the opinion previously quoted.

In holding that the entire $1,100 was properly characterized as an "employment-related expense," we are in no sense canonizing summer camp expenses for purposes of section 44A. This decision is specifically limited to the facts and circumstances before us.

The second expense at issue is the $116 expense incurred by petitioner to send her son on a school trip to Washington, D.C., during the week of his Easter vacation. Again, we find that this trip was primarily undertaken for the son's well-being and protection. We note that the cost of a housekeeper for the week in question would have exceeded the cost of the trip.[13]

Expenses incurred for transportation are subject to the disqualification provisions of section 1.44A–1(c)(3)(i), Income Tax Regs., which in pertinent part provides:

Expenses incurred for transportation of a qualifying individual * * * between the taxpayer's household and a place outside the taxpayer's household where services for the care of the qualifying individual are provided are not incurred for the care of a qualifying individual.

We are of the opinion that the expenses incurred for the transportation of petitioner's son to Washington are not disqualified by this language. The cost of transportation from petitioner's home to the place of departure is the type of expense that this language excludes. The care of Paul Zoltan commenced at that point. The transportation by bus to Washington began *after* petitioner's son was placed under the care of the supervisors of the expedition. This transportation was inseparably tied to that care and does not fit within the

---

[13]Five days times 11 hours per day times $3 per hour equals $165.

disallowance provisions of section 1.44A–1(c)(4), Income Tax Regs.[14]

We believe, however, that a substantial portion of the expense incurred by petitioner to send her son to Washington, D.C., constituted an educational expense of the type subject to allocation pursuant to section 1.44A–1(c)(3)(i) and section 1.44A–1(c)(5), Income Tax Regs. Petitioner has made no effort to bifurcate the cost of the D.C. trip between educational services and care services. Relying upon his assertion that petitioner was not motivated by a concern for her son's well-being and protection, respondent also failed to suggest an allocation between the competing services. Therefore, it is left to us to estimate the proper allocation. Convinced that petitioner incurred expenses attributable to care services, we apply the rule of *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930). Bearing heavily against the taxpayer, "whose inexactitude is of [her] own making," *Cohan v. Commissioner, supra* at 544, we find that petitioner incurred care-related expenses in the amount of $35 as a consequence of her son's Washington, D.C., trip. Accordingly, this amount qualifies as an "employment-related expense" within the meaning of section 44A(c)(2)(A)(ii).

To summarize, when the characterization of an expense is challenged under section 44A(c)(2)(A)(ii), the issue is resolved by reference to the specific facts at hand; the Court must ascertain the taxpayer's motive. If the disputed expense was incurred with the dominant purpose of permitting the taxpayer to be gainfully employed and to assure the child's well-being and protection while the taxpayer is so employed, it qualifies as employment-related despite the existence of other incidental benefits. A parent is not prohibited from choosing child care that carries incidental benefits so long as the moving force behind the decision is the desire to assure the protection and well-being of the child. Here, we have made a factual finding, in the case of both the summer camp and the Washington trip, that petitioner's primary concern was the

---

[14]The type of expenses that the language of sec. 1.44A–1(c)(3)(i), Income Tax Regs., is designed to disallow is exemplified by the expenses incurred by petitioner in transporting her son to camp. In that case, her son was not released into the care of the service providers until the destination was reached. See *Warner v. Commissioner*, 69 T.C. 995, 997 (1978).

care of her child. Any incidental services provided to her child at summer camp were inextricably tied to the child care services. With respect to the Washington trip, the expenses attributable to educational services must be carved out of the otherwise qualifying expense since these services were substantial and were not incidental to, or inseparably a part of, the care-related services.

Finally, we must determine whether the $350 paid to petitioner's daughter to take care of her younger brother qualifies under section 44A(c)(2)(A). The qualification of payments to related individuals is limited by section 44A(f)(6), which provided during the years in question as follows:[15]

Sec. 44A(f). SPECIAL RULES.—For purposes of this section—

*    *    *    *    *    *    *

(6) PAYMENTS TO RELATED INDIVIDUALS.—

(A) IN GENERAL.—Except as provided in subparagraph (B), no credit shall be allowed under subsection (a) for any amount paid by the taxpayer to an individual bearing a relationship to the taxpayer described in paragraphs (1) through (8) of section 152(a) (relating to definition of dependent) or to a dependent described in paragraph (9) of such section.

(B) EXCEPTION.—Subparagraph (A) shall not apply to any amount paid by the taxpayer to an individual with respect to whom, for the taxable year of the taxpayer in which the service is performed, neither the taxpayer nor his spouse is entitled to a deduction under section 151(e) (relating to deduction for personal exemptions for dependents), but only if the service with respect to which such amount is paid constitutes employment within the meaning of section 3121(b).

Since petitioner's daughter bears a relationship to petitioner described in section 152(a)(1), the expenses paid to her do not qualify unless the exception as provided in section 44A(f)(6)(B) applies. In order for the exception to apply, the services with respect to which the $350 was paid must constitute employment within the meaning of section 3121(b). Although petitioner does not run afoul of section 3121(b)(3),[16] we must deny the

---

[15]Sec. 44A(f)(6) was amended by sec. 121(a) of Pub. L. 95–600, 92 Stat. 2763, 2779, Nov. 6, 1978, effective for the taxable years beginning after Dec. 31, 1978.

[16]Sec. 3121(b)(3) excludes from the definition of "employment"—

(3)(A) service performed by an individual in the employ of his spouse, and service performed by a child under the age of 21 in the employ of his father or mother;

(B) service not in the course of the employer's trade or business, or domestic service in a private home of the employer, performed by an individual in the employ of his son or

characterization of the $350 as an employment-related expense because petitioner has failed to prove that her daughter was an "employee." See the flush language of section 3121(b), which provides in pertinent part: "For purposes of this chapter, the term 'employment' means any service, of whatever nature, performed * * * (B) outside the United States by a citizen of the United States as an employee for an American employer." The term "employee" is defined in section 3121(d)(2) to include "any individual who, under the usual common law rules applicable in determining the employee-employer relationship, has the status of an employee." Petitioner has presented no proof with respect to the measure of control she exerted over her daughter during her son's visit. The facts are clear that petitioner did not withhold any employment taxes from the payments made to her daughter. See secs. 3101, 3102, 3111. Because petitioner has failed to prove that she satisfied the second test of section 44A(f)(6)(B), the $350 paid to her daughter during 1978 is not includable in "employment-related expenses" under section 44A(c)(2)(A)(ii).[17] *Welch v. Helvering*, 290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. Because we find that the $350 is disqualified by section 44A(f)(6)(B), we need not address respondent's other challenges to this expenditure.

Accordingly,

*Decision will be entered under Rule 155.*

---

daughter; except that the provisions of this subparagraph shall not be applicable to such domestic service if—

(i) the employer is a surviving spouse or a divorced individual and has not remarried, or has a spouse living in the home who has a mental or physical condition which results in such spouse's being incapable of caring for a son, daughter, stepson, or stepdaughter (referred to in clause (ii)) for at least 4 continuous weeks in the calendar quarter in which the service is rendered.

(ii) a son, daughter, stepson, or stepdaughter of such employer is living in the home, and

(iii) the son, daughter, stepson, or stepdaughter (referred to in clause (ii)) has not attained age 18 or has a mental or physical condition which requires the personal care and supervision of an adult for at least 4 continuous weeks in the calendar quarter in which the service is rendered.

[17]We note that under the more liberal provisions of sec. 44A(f)(6), as amended for taxable years beginning after Dec. 31, 1978, the result might be otherwise.

Reviewed by the Court.

WHITAKER, *J.*, concurring in part and dissenting in part: I agree that the expenses allegedly incurred for child care during the son's European vacation are not a proper element of the child care credit. I further agree that there must be an allocation with respect to the cost of the Washington, D.C., vacation trip. I disagree, however, with the failure of the majority to make an allocation of the summer camp expense, and I strongly disagree with the reasoning of the majority.

Entitlement to the credit is dependent upon meeting two separate tests. The expenses must be incurred in order to permit the taxpayer to become gainfully employed, and they must be incurred for the "care" of the child (or in some cases of the dependent). Under the facts of this case, petitioner has demonstrated that she must incur child care expenses in order to be gainfully employed. The question is whether or not the expenses here in issue are for care within the meaning of the statute.

The proper constituents of permissible child care expense must be determined not only on the basis of the words of the statute but on the pertinent legislative history. In this case, I believe that the most definitive explanation of congressional intent is to be found in the report of the Senate Finance Committee on the 1971 amendments to section 214.[1] That report as I read it makes it clear that the Congress was visualizing care outside the home in a very limited sense. The following language is significant:

In addition, however, the committee recognized that in the case of child care, the child is often taken to a day care center or to another person's home for care during the day. As a result, the amendment makes provision for child care expenses outside of the home up to [specified dollar amounts] * * * [S. Rept. 92–437, at 61, 1972–1 C.B. 593.]

---

[1] S. Rept. 92–437, at 13–14, and 59–62 (1971), 1972–1 C.B. 565–566, 591–593.

Respondent's regulations have interpreted the congressional intent very liberally, at least in the context of an educational environment, by the allowance of a portion of private boarding school expenses. But the majority in this case has used the analogy of example (2) of section 1.44A–1(c)(6), Income Tax Regs., to go far beyond the statutory language and the stated congressional intent by failing to recognize the distinction between purely recreational activities during vacation periods and circumstances attendant on private schooling.

In my judgment, we are not required by the regulations to permit a deduction for the costs of an away-from-home summer camp, or, for that matter, any other purely recreational activity (such as, in this case, the vacation trips to Washington, D.C., and to Europe), beyond that part of the actual cost incurred which represents the reasonable cost of day care while the custodial parent is actually working. Such activities, beyond the custodial type in nursery school, simply do not constitute a part of the care of a qualifying individual within section 1.44A–1(c)(3), Income Tax Regs. The fact, if it be a fact, that day care at home might have cost more than a vacation trip is simply irrelevant. This may be a hard line to draw, but draw it we should. The leap from a day care center to an 8-weeks summer camp in Canada is more than I can make. It is one thing to allow a credit for the costs of a day camp on the days on which petitioner was at work, but the majority allows a credit for the food and lodging for 24 hours a day, 7 days a week, for 2 months. Similarly, it is one thing to allow a credit for the costs of food and lodging when they are incurred to provide education, but the majority allows such costs when they are simply incurred for recreation.

Petitioner in this case is entitled to some credit for employment-related expenses, subject, of course, to the special rules of section 44A(f). In the absence of other evidence, I would determine the amount of these expenses by an allocation under the authority of *Cohan v. Commissioner*, 39 F.2d 540 (2d Cir. 1930). Such an allocation would be designed to segregate from the actual vacation and camp costs incurred that part which represents the cost of the child's protection during a period equivalent to the parent's workday and the needs appropriate for that period. This would constitute the employment-related expense. The allocation should exclude the costs

of lodging, additional meals, transportation, and educational or recreational activities. In this case, I would apply such an allocation to the summer camp and Washington trip costs but not to the claimed European expenses for the reasons stated by the Court.

FAY, SIMPSON, and IRWIN, *JJ.*, agree with this concurring and dissenting opinion.