*Decisions will be entered under Rule 50.*

ARTHUR I. SALTZMAN, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5899-68. Filed April 2, 1970.

Arthur I. Saltzman, pro se.
*Joel Gerber*, for the respondent.

OPINION

The issue for decision is whether the petitioner can deduct under section 170 the expenses of his trips to Pittsburgh and to Europe.

Because Hillel is a corporation which qualifies under section 170(c) (2), a contribution or gift "to or for the use of" Hillel is deductible. With respect to a contribution of services, section 1.170–2(a)(2), Income Tax Regs., provides:

(2) No deduction is allowable for contribution of services. However, unreimbursed expenditures made incident to the rendition of services to an organization contributions to which are deductible may constitute a deductible contribution. For example, the cost of a uniform without general utility which is required to be worn in performing donated services is deductible. Similarly, out-of-pocket transportation expenses necessarily incurred in rendering donated services are deductible. * * *

The petitioner has the burden of proving that the expenses of his trips qualify as charitable contributions deductible under section 170. *Milton Hart*, 41 T.C. 131, 142 (1963), affirmed per curiam 338 F. 2d 410 (C.A. 2, 1964).

The petitioner relies on Rev. Rul. 55–4, 1955–1 C.B. 291, and Rev. Rul. 56–509, 1956–2 C.B. 129, and contends that the expenses of his trips to Pittsburgh and Europe qualify for deduction under these rulings. Rev. Rul. 55–4 holds that a taxpayer who renders gratuitous service to a charitable organization may deduct certain unreimbursed traveling expenses incurred while away from home "in connection with the affairs of the [charitable] association and at its direction." Rev. Rul. 56–509 allows civil defense volunteers to deduct certain unreimbursed expenses incurred:

*in the performance of their volunteer duties,* such as traveling expenses to watch atomic bomb tests, the expenses of attending state meetings of civil defense volunteers, or other expenses *directly connected with and solely attributable to* the rendition of such volunteer services, * * * [Emphasis added.]

The petitioner argues that his trips to Pittsburgh and Europe are analogous to the traveling by a civil defense volunteer to watch atomic bomb tests.

In our opinion, the petitioner has failed to show that his expenses come within the tests set forth in these revenue rulings. Unlike the facts in Rev. Rul. 55–4, the petitioner's independent trips to Pittsburgh and to Europe were not in connection with any affairs of Hillel, nor were the trips taken at the direction or even at the request of Hillel. It was the petitioner who suggested the trips, and the decisions as to whether to make the trips and as to when and where to go were solely his.

Nor are the petitioner's expenses "directly connected with and solely attributable to" his donated services to Hillel. We accept the fact that the Hillel program benefited from the petitioner's trips to Pittsburgh

and to Europe; yet, we cannot find that the expenses of these trips were solely attributable to his work with Hillel. It is clear that the petitioner had a strong interest in folk dancing. He began dancing in 1962 and began teaching the subject at Hillel in 1964. Since he received no compensation for his services to Hillel, it seems clear that he acted out of an interest in the subject. Folk dancing was for him a hobby or avocation. At one point in his testimony, he stated that he attended the festivals because of his interest in folk dancing, but at another point, he testified that he would not have made the trips but for his teaching at Hillel. In the light of this record, we cannot find that his sole reason for making the trips was to benefit Hillel; it seems clear that the petitioner also derived substantial personal pleasure from participating in the folk dance festivals while on the trips. In addition, nothing in the record indicates that he could not have continued to teach effectively had he not made the trips; nothing indicates that Hillel was even considering expending its own money to send an observer to these festivals had the petitioner not volunteered to go.

Moreover, the expenses of the petitioner's trips to Pittsburgh and Europe fail to meet the statutory tests of deductibility. When expenses have been allowed as a charitable contribution, it was clear that they were incurred for charitable purposes, and not for personal benefit. *Estate of Philip A. Carroll*, 38 T.C. 868, 874 (1962); *Henry Cartan*, 30 T.C. 308, 321–322 (1958); *Roy Upham*, 16 B.T.A. 950 (1929); *Wolfe* v. *McCaughn*, 5 F. Supp. 407 (E.D. Pa. 1933). On the other hand, the charitable deduction has not been allowed when the activity for which the expenses are incurred brings a substantial personal benefit to the taxpayer, even though the charity also benefits. *Green* v. *Bookwalter*, 207 F. Supp. 866, 880 (W.D. Mo. 1962), affd. 319 F. 2d 631 (C.A. 8, 1963); see also *Orr* v. *United States*, 343 F. 2d 553, 557 (C.A. 5, 1965), affirming 226 F. Supp. 809 (M.D. Ala. 1963). In reaching our conclusion in this case, we have no doubt about the good faith of the petitioner, but it appears that in circumstances like these when there is a substantial personal benefit resulting from the trip, and the trip is not a necessary part of the charity's activities, a charitable deduction should not be allowed for its expenses.

The petitioner does not argue against the respondent's disallowance of the expenditure for food on the Rhode Island trip when the petitioner was not away from home overnight. The respondent correctly disallowed that deduction. *Clinton H. Mitchell*, 42 T.C. 953, 974 (1964).

*Decision will be entered for the respondent.*