THOMAS A. MacMICHAEL and ELEANOR W. MacMICHAEL, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
MacMichael v. Commissioner
Docket No. 13803-81.
United States Tax Court
T.C. Memo 1982-703; 1982 Tax Ct. Memo LEXIS 42; 45 T.C.M. (CCH) 271; T.C.M. (RIA) 82703; December 2, 1982. Thomas A. MacMichael, pro se. Ray K. Kamikawa, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code *43 [1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure. [2]2 The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined a deficiency in petitioners' Federal income tax for the year 1977 in the amount of $1,284.01. The only issue for decision is whether any amount paid by petitioners in connection with a golf tour of Europe sponsored by the People-to-People Sports Committee is allowable as a charitable contribution deduction under section 170. Some of the facts have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners Thomas A. MacMichael and Eleanor W. MacMichael, husband and wife, resided in Fresno, California, at the time *44 they filed their petition. They filed a joint Federal income tax return for 1977 with the Internal Revenue Service Center at Fresno, California. At all times relevant to this proceeding, Mr. MacMichael has been a practicing attorney, while Mrs. MacMichael has been a homemaker. For a number of years, petitioners have enjoyed playing amateur golf as a form of recreation. It is customary for them to vacation several times each year at various golf resorts throughout the United States. In 1977, petitioners participated in a 30-day golf tour of Europe sponsored by the People-to-People Sports Committee, Inc. (Sports Committee). The activities of the Sports Committee are thoroughly discussed in Seed v. Commissioner,57 T.C. 265 (1971), a case which involved a 1966 golf tour sponsored by that organization. It will suffice here to observe that the Sports Committee is an organization described in section 501(c)(3) (contributions to which are deductible as provided in section 170), which, among other things, sponsors foreign golf tours for the purpose of "broadening understanding and friendship with people of other nations." Seed v. Commissioner,supra at 267. *45 The parties agree that the golf tour in the instant case was similar in all material respects to the 1966 tour described in Seed. Both tours involved a schedule of amateur golf matches between the tour participants and golfers from various cities visited in Europe. Following a golf match, a reception would usually be held in order to permit the tour members to socialize with the European golfers. Throughout the tours, the hotels in which the tour participants stayed were among the best hotels in the cities visited and the golf courses at which the matches were held were among the finest in Europe. The tour participants made direct payments to the Sports Committee to cover various costs associated with the tours. In addition, they incurred out-of-pocket expenses in connection with the tours. If the tours had been canceled, the payments made to the Sports Committee would have been refunded. The tour in the instant case included visits to Paris, Zurich, Florence, Barcelona, and London. On four days during this tour, petitioners played in golf matches arranged by the Sports Committee; on five other days, petitioners spent time traveling to and from those matches. The other *46 days of the tour were spent either sightseeing or shopping. Petitioners expended $9,678.40 in connection with their participation in the golf tour. On their 1977 income tax return, they deducted $2,300 of this expenditure as a charitable contribution. This deduction represents: (1) Petitioners' allocation of a portion of their air travel and hotel costs to the nine days of the tour during which petitioners either played in golf matches sponsored by the Sports Committee or traveled to and from those matches ($1,800), and (2) petitioners' share of the cost of the receptions held after certain matches ($500). Respondent disallowed petitioners' deduction of these amounts as charitable contributions on the basis that the expenditures incurred in connection with the tour did not meet the requirements of section 170. Petitioners argue that the deduction constitutes either a direct charitable contribution made to further the charitable activities of the Sports Committee or an expenditure made incident to the rendition of services to the Sports Committee pursuant to section 1.170A-1(g), Income Tax Regs.
Section 170(a) allows as a deduction any charitable contribution the payment of which *47 is made within the taxable year. For purposes of section 170, the meaning of the term "charitable contribution" is set forth in DeJong v. Commissioner,36 T.C. 896, 899 (1961), affd. 309 F.2d 373 (9th Cir. 1962), as follows: As used in this section the term "charitable contribution" is synonymous with the word "gift." * * * A gift is generally defined as a voluntary transfer of property by the owner to another without consideration therefor. In a payment proceeds primarily from the incentive of anticipated benefit to the payor beyond the satisfaction which flows from the performance of a generous act, it is not a gift. * * * While no deduction is allowable for the value of services donated to a charitable organization, section 1.170A-1(g), Income Tax Regs., provides generally that out-of-pocket expenditures made incident to the rendition of services to a charitable organization may constitute a deductible contribution. Petitioners have the burden of proving that the expenditures in question qualify as charitable contributions. Tate v. Commissioner,59 T.C. 543, 550 (1973); Saltzman v. Commissioner,54 T.C. 722, 724 (1970). *48 Initially, we note that the taxpayers in Seed were denied charitable contribution deductions for expenditures incurred with respect to the Sport Committee's 1966 golf tour of Europe. This Court found that, by participating in the golf tour, the taxpayers had received substantial personal benefits in exchange for both their direct payments to the Sports Committee and their out-of-pocket expenditures incurred in connection with the tour. "They toured Europe for a month with people whom they found to be congenial. They stayed at 'deluxe' hotels, albeit not always in the best rooms. They played golf at some of the finest golf courses in Europe. And they met Europeans of a social and economic position similar to their own, to whom otherwise they might not have had access." Seed v. Commissioner,supra at 275. The Court concluded that the receipt of such benefits precluded any characterization of the taxpayers' expenditures as charitable contributions, whether viewed as either direct payments or out-of-pocket expenses incurred in the rendition of services to the Sports Committee. It was observed in Seed, however, that "it may be possible to combine a *49 gift to charity with a payment in exchange for consideration flowing to the contributor, and in such a situation a deduction may be allowable to the extent that the payment exceeds the consideration." Seed v. Commissioner,supra at 278. The Court stated that it was unnecessary to consider this question in that case since the taxpayers there had not raised the issue, but had instead conceded that the fair market value of the goods and services received by them approximated the amount of money they spent on the tour. Petitioners, on the other hand, contend that the amount which they expended on their tour exceeded the consideration flowing to them by $2,300. In support of this contention, petitioners note that the golf matches sponsored by the Sports Committee were held at times and in cities chosen by the Sports Committee, and they argue that the $500 paid for the cost of receptions held after certain matches was paid to the Sports Committee and spent at its discretion. For these reasons, petitioners conclude that they received no personal benefit or consideration in exchange for either the $1,800 of air travel and hotel costs which they allocated to the nine *50 days of their tour devoted to the golf matches, or the $500 expended for the cost of the receptions. Thus, petitioners think they have shown a $2,300 discrepancy between the amount they expended on their tour and the value of the goods and services which they received. We think otherwise. Among the various documents petitioners received from the Sports Committee, the following appears: Some of you are travelling first-class and a number of you are deviating somewhat from the team itinerary. We will use as the norm the air fare as incorporated in the standard trip for your team, including now the Paris stop, and we will either bill you or refund you for any differences in the air fares when mailing you the tickets. The estimated cost of the [receptions] includes your foreign quests as well as yourselves. We believe we have estimated this cost of the receptions to be hosted for your team very much on the high side. We figured that you would much rather be refunded for any amounts left over in the party fund than to be billed additional amounts during the trip. The fund is yours to do with as you see fit. If it is apparent there will be money left over, your team might *51 decide to use it for a special sightseeing trip or luncheon or dinner or whatever. We think these statements show that the total expenditure incurred by petitioners in connection with their tour did not exceed the fair market value of the consideration receive by them in exchange for that expenditure. Moreover, even if we consider the value of the tour to petitioners, there is not merit in the argument that petitioners received no personal benefit or consideration in return for the portion of the total expenditure which they allocated to the golf matches and the $500 attributable to the receptions. The record in this case clearly shows that the opprotunity to play golf and to socialize with Europeans was the primary reason petitioners joined the tour. Consequently, we believe petitioners received full consideration in exchange for the amount of money they spent on the tour. In accordance with the foregoing, we conclude that petitioners are not entitled to deduct any portion of the amount paid in connection with their golf tour of Europe as a charitable contribution under section 170 or the regulations thereunder. Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.