T.C. Memo. 1996-308

UNITED STATES TAX COURT

HARRY T. CAVALARIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 849-95.                          Filed July 9, 1996.

<u>Richard Eugene Marsh, Jr.</u>, for petitioner.

<u>Jeanne Gramling</u>, for respondent.

MEMORANDUM OPINION

POWELL, <u>Special Trial Judge</u>:  This case was assigned
pursuant to the provisions of section 7443A(b)(3) and Rules 180,
181, and 182.[1]

---

[1]  Unless otherwise indicated, section references are to
the Internal Revenue Code in effect for the years in issue, and
all Rule references are to the Tax Court Rules of Practice and
Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1990 and 1991 in the respective amounts of $4,946 and $6,665, and accuracy-related penalties pursuant to section 6662(a) in the amounts of $989 and $1,333, respectively. At the time of filing the petition, petitioner resided in Charlotte, North Carolina.

The substance of the dispute focuses on the deductibility of a large number of relatively small items. After concessions,[2] the issues are: (1) Whether petitioner is entitled to certain claimed unreimbursed employee business expense deductions for the years in issue; (2) whether petitioner is entitled to certain claimed charitable contribution deductions for the years in issue; and (3) whether petitioner is liable for penalties pursuant to section 6662(a) for the years in issue. Each issue is discussed separately.

We note at the outset that deductions are a matter of legislative grace and petitioner bears the burden of proving his entitlement to and the amount of deductions. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). If the record provides sufficient evidence to show that a taxpayer incurred a deductible

---

[2] Respondent concedes that petitioner is entitled to charitable contribution deductions, in excess of the amounts allowed in the notice of deficiency, for the taxable years 1990 and 1991 in the amounts of $4,182 and $6,719, respectively. Petitioner concedes that he is not entitled to deduct any portion of a $55 expenditure ($38 of which was deducted) made for spa services on August 13, 1990, as a charitable contribution.

expense, but the taxpayer has failed to substantiate the precise amount, in some situations the Court may estimate the amount of the expense. Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930). In so doing, our estimate may be weighted against petitioner whose inexactitude is of his own making. Cohan v. Commissioner, supra at 544. For ease of discussion, we have combined our findings of fact and opinion with respect to each issue.

Employee Business Expenses

For the past 20 years petitioner has been involved in real estate and recreation businesses in Charlotte, North Carolina. Petitioner owns between 25 and 50 percent of several businesses (the corporations), organized primarily as S corporations, that own and lease commercial real estate. The corporations' tenants included three businesses that operate roller skating rinks, a Family Dollar store, a Circle K gas station and convenience store, and a BoJangles restaurant. Petitioner served as an officer, typically secretary, in each of the corporations during 1990 and 1991. Petitioner received no compensation from the corporations during 1990 or 1991 for his services as an officer and employee. Petitioner also served as president of Skate Palace, Inc. (Skate Palace), an entity that operates a roller skating rink. Skate Palace leases the rink from Rex Annex

Billiards, Inc., one of the corporations in which petitioner owns an interest.

Petitioner performed many duties for the corporations including: (1) Frequently visiting the properties for maintenance or general supervision; (2) traveling to Skate Palace to assist in the operations of the roller skating rink; and (3) traveling to schools and radio stations to market the roller skating rinks. In the course of performing these duties, petitioner incurred traveling expenses, entertainment expenses, and other expenses that were not reimbursed by the corporations. Petitioner could have received reimbursement for these expenses from the corporations, but he failed to ask.

On his 1990 and 1991 Federal income tax returns, petitioner claimed miscellaneous itemized deductions in the amounts of $12,831 and $11,629, respectively. These amounts primarily represent what petitioner characterized as unreimbursed employee business expenses incurred on behalf of the corporations. The 1991 miscellaneous itemized deductions include expenditures in the amounts of $579 for tax return preparation fees and $25 for a real estate license.

In the notice of deficiency, respondent disallowed petitioner's 1990 and 1991 claimed unreimbursed employee expenses in the amounts of $11,404 and $11,050, respectively. For the

taxable year 1991, respondent disallowed the deductions for the tax return preparation fees and the real estate license fee.

Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business".  An employee, however, is not entitled to a deduction for an expense if the employee has a right of reimbursement from his employer, because the employee's expenditure is not "necessary".  Heidt v. Commissioner, 274 F.2d 25, 28 (7th Cir. 1959), affg. T.C. Memo. 1959-31; Lucas v. Commissioner, 79 T.C. 1, 7 (1982).

Petitioner is not entitled to deduct the expenses he incurred as an employee under section 162.  As we stated in Stolk v. Commissioner, 40 T.C. 345, 356 (1963), affd. per curiam 326 F.2d 760 (2d Cir. 1964): "These charges were business expenses of the * * * [corporations] and petitioner cannot convert * * * [the corporate] expenses into his own by failing to claim repayment, even though paid by him."  See also Orvis v. Commissioner, 788 F.2d 1406 (9th Cir. 1986), affg. T.C. Memo. 1984-533; Coplon v. Commissioner, 277 F.2d 534 (6th Cir. 1960), affg. T.C. Memo. 1959-34.  Petitioner argues, in the alternative, that the employee business expenses are deductible pursuant to section 212 as expenses incurred in his capacity as an investor.  A shareholder, however, is not entitled to a deduction from his individual income for the payment of corporate expenses.  Deputy

v. du Pont, 308 U.S. 488, 494 (1940). We also note that petitioner may face other bars to deductibility; for instance, substantiation. It appears as if an automobile mileage log allegedly prepared contemporaneously with petitioner's business travel was actually prepared in preparation for litigation. Accordingly, we hold for respondent with respect to the deductions for unreimbursed employee business expenses.

Petitioner failed to introduce any evidence to show that he renewed a real estate license in 1991, and there is no basis upon which we can sustain a deduction for this expense.

Petitioner failed to substantiate the amount expended for tax return preparation fees during 1991. A bill from the accounting firm of Cherry, Bekaert & Holland indicated that petitioner spent $599 during 1990 for the preparation of his 1989 tax return. Petitioner's 1990 tax return indicates that Cherry, Bekaert & Holland also prepared this return. The return is complicated and voluminous. Accordingly, it appears certain that petitioner incurred tax preparation fees in 1991, and we allow petitioner a deduction on his 1991 Federal income tax return in the amount of $450 for tax return preparation fees. See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).

Charitable Contribution Deductions

Petitioner has been active in the Greek Orthodox Church for many years. He served on the local parish board and later on the

diocese board.  Petitioner also served on the five-member national executive committee of the St. Photios Foundation (St. Photios).  St. Photios is an organization established to maintain a shrine honoring early Greek immigrants.  St. Photios has expanded and now hosts youth retreats, workshops, and seminars featuring prominent speakers.  St. Photios also houses the mission program of the Greek Orthodox Church.

In addition to his other charitable activities, petitioner has been active in the American Hellenic Educational Progressive Association (AHEPA).  AHEPA is a national organization created in 1922 to help Greek immigrants obtain citizenship, learn the English language, and assimilate into society.  Without abandoning its original purpose, AHEPA has expanded and now operates to preserve Hellenistic roots through cultural and educational programs.  AHEPA is organized on the local, district, and national levels.  Petitioner served on all three levels of AHEPA's organization.

During 1990 and 1991 petitioner served on the diocesan council for the Greek Orthodox Church, the national executive committee of St. Photios, and as secretary and treasurer for the AHEPA district lodge.  Petitioner traveled extensively to various organizational meetings and events.  The locations of the meetings included:  Washington, D.C.; Atlanta, Georgia; Knoxville, Tennessee; Baltimore, Maryland; Fort Lauderdale,

Florida; Miami Beach, Florida; Richmond, Virginia; Jacksonville, Florida; Virginia Beach, Virginia; Nassau, Bahamas; St. Augustine, Florida; Montgomery, Alabama; Birmingham, Alabama; Athens, Greece; and Istanbul, Turkey.

On his 1990 and 1991 Federal income tax returns petitioner deducted charitable contributions in the amounts of $29,105 and $40,603,[3] respectively. The bulk of these amounts consisted of unreimbursed expenses incurred during the above listed trips. Petitioner asserts that these expenditures were incurred in the process of providing services to the Greek Orthodox Church, St. Photios, and AHEPA. Typically, the amounts claimed as expenses for any given trip include airfare, lodging at a deluxe hotel, meals, other travel expenses, and generous tips (occasionally exceeding $100). Petitioner generally included, as an expense for meals, the bill from an expensive lunch or dinner at which petitioner treated numerous people attending the meeting. The 1990 figure includes a $1,000 deduction for clothing donated to the Crossnore School.

In the notice of deficiency, respondent disallowed charitable contribution deductions for the taxable years 1990 and 1991 in the amounts of $11,177 and $14,492, respectively. After concessions, the amount of charitable contribution deductions in

---

[3] The deduction claimed in 1991 was reduced to $37,074 pursuant to sec. 170(b), which limits the amount a taxpayer can deduct as a charitable contribution for any taxable year.

dispute involves only (1) the valuation of clothing donated to Crossnore School, and (2) unreimbursed travel expenses claimed by petitioner. Respondent does not dispute the tax exempt status of any of the organizations involved.

1. <u>Crossnore School Deduction</u>

Section 170(a) allows a deduction for charitable contributions. If the contribution is made in property other than money, the amount of the contribution is the fair market value of the property. Sec. 1.170A-1(c)(1), Income Tax Regs.

On his 1990 Federal income tax return petitioner claimed a charitable contribution deduction in the amount of $1,000 for clothing donated to Crossnore School. A handwritten list of the items donated filled the majority of a sheet of looseleaf paper. The items of greatest value on the list include eight three-piece suits, four sport coats, one tuxedo, two overcoats, four pairs of shoes (one new), one leather coat, and two pairs of lizard skin boots. Respondent determined that the fair market value of the property was $353.

Petitioner's testimony focused on the cost of some of the items but, with the exception of the new shoes, no evidence was introduced to show the condition or the fair market value of the property. Accordingly, we conclude petitioner has failed to meet his burden of proving that the fair market value of the donated items was $1,000. On the other hand, we conclude that the value

respondent placed on the donated items is low, and therefore, find the value of the items donated to Crossnore School to be $500. See Cohan v. Commissioner, 39 F.2d at 543-544.

2. Unreimbursed Travel Expenses

As previously noted, section 170(a) allows a deduction for charitable contributions. Section 170(c) requires that a charitable contribution, inter alia, be made "to or for the use of" the charitable organization. No deduction is allowed under section 170 for a contribution of services. However, unreimbursed expenditures made incident to the rendition of services to a charitable organization may constitute a deductible contribution. Sec. 1.170A-1(g), Income Tax Regs. Allowable deductions include transportation expenses and reasonable expenses for meals and lodging necessarily incurred while away from home. Id. The phrase "while away from home" has the same meaning as when used for purposes of section 162. Id. Therefore, a taxpayer's unreimbursed expenses for meals incurred while rendering services are only deductible if the nature of the travel requires the taxpayer to sleep or rest ("sleep or rest rule"). See United States v. Correll, 389 U.S. 299 (1967); Saltzman v. Commissioner, 54 T.C. 722, 725 (1970).

A taxpayer making a charitable contribution is required to keep a canceled check, a receipt from the donee organization, or other reliable written record showing the name of the donee, the

date of the contribution, and the amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs. The reliability of a written record is to be determined based on all the facts and circumstances of a particular case. Sec. 1.170A-13(a)(2)(i), Income Tax Regs. Factors indicating that a written record is reliable include the contemporaneous nature of the writing and the regularity of the taxpayer's recordkeeping procedure. Id. Travel expenses incurred by a person while rendering services on behalf of a charitable organization are not subject to the strict substantiation requirements of section 274(d). Sec. 274(d); Francis v. Commissioner, T.C. Memo. 1988-226.

Respondent disallowed certain deductions claimed by petitioner for unreimbursed travel expenses for the taxable years 1990 and 1991. According to the stipulation of facts, after concessions, the amount of unreimbursed travel expenses at issue for 1990 and 1991 are $5,859.94 and $9,400, respectively. Respondent disallowed these deductions for one or more of the following reasons: (1) Petitioner failed to substantiate the deductions; (2) certain expenses were deducted twice; (3) certain meal expenses are not deductible because they were not associated with overnight travel; (4) some expenditures were lavish or extravagant; (5) some expenditures were not necessary; and (6) section 170(j) disallows the expenses from certain trips involving personal pleasure, recreation, or vacation. Respondent

has phrased many of these arguments generally, without reference to specific deductions. We have considered these arguments with regard to each deduction, but in the interest of brevity have also chosen to speak generally whenever possible.

With respect to his charitable activities, petitioner maintained fairly detailed records of his expenditures. While traveling, petitioner collected receipts from each of his expenditures and placed them in an envelope. If petitioner was unable to obtain a receipt for an expenditure, he made a contemporaneous notation of the expenditure. Upon returning from a trip, petitioner would put the envelope containing the receipts for that trip in a file marked with the name of the charitable organization to which the trip related. This system ensured that the name of the organization, the date (at least to within a few days), and the amount of each expenditure was recorded. Accordingly, we conclude, with the exception of items specifically mentioned below, petitioner has substantiated his charitable contribution deductions. In light of this conclusion, and the volume of transactions at issue, we shall only address those contentions about which there appears to be a genuine dispute, and we hold for petitioner with respect to any of the disputed deductions not specifically mentioned herein.

Respondent asserts that petitioner deducted several expenditures twice. Specifically, respondent asserts that an

expenditure in the amount of $1,116 paid by petitioner to finance two banquets was allowed as a deduction for a trip to Birmingham, Alabama, on May 29-31, 1991, and also claimed as a cash contribution to the Diocese of Atlanta (see paragraphs 21 and 33 of the stipulation of facts and corresponding exhibits).[4]  Based on our review of the relevant stipulation of facts and exhibits, we conclude that the banquet expenses were claimed twice. Accordingly, the $1,215 cash contribution to the Diocese of Atlanta described in paragraph 21 of the stipulation of facts must be reduced by $1,116.  Additionally, respondent asserts that several meal deductions relating to a trip to Washington, D.C., on July 7-12, 1990, were deducted as meal expenses and also deducted as lodging expenses.  A review of paragraph 14 of the stipulation of facts and Exhibit 9 shows that expenses for several meals totaling $67.69[5] were claimed twice.  Accordingly, we find $67.69 of the disputed meal expenses referred to in paragraph 14 of the stipulation of facts should be disallowed.

---

[4]   The stipulation of facts sets forth the amount of deductions claimed, allowed, and disallowed with respect to each trip and the date of each trip.  This information is voluminous and unnecessary to an understanding of the issues; accordingly, we have not reproduced it.  However, in an effort to simplify the parties' task of making computations under Rule 155, we have referenced our discussion of the issues to the stipulation of facts.

[5]   This amount is the sum of individual meals in the amounts of $11.26, $4.73, $4.73, $36.25, and $10.72.

On the morning of February 21, 1990, petitioner flew to Atlanta, Georgia, for a diocese meeting.  Petitioner returned to his home in Charlotte, North Carolina, later that evening. Because the trip did not require sleep or rest, petitioner is not entitled to a deduction for meals on this trip.  Accordingly, the meal expenses claimed in the amount of $25, listed in paragraph 17 of the stipulation of facts, are not deductible.  See United States v. Correll, supra; Saltzman v. Commissioner, supra at 725; sec. 1.170A-1(g), Income Tax Regs.

Respondent asserts that some expenses were lavish or extravagant and that some expenses were not required to be paid by petitioner.  Both assertions raise the question whether the expenses were reasonable and/or necessary.  Section 1.170A-1(g), Income Tax Regs., provides, in relevant part:

> Similarly, out-of-pocket transportation expenses necessarily incurred in performing donated services are deductible. Reasonable expenditures for meals and lodging necessarily incurred while away from home in the course of performing donated services also are deductible.

A requirement of reasonableness is inherent in the concept of necessary.  Boser v. Commissioner, 77 T.C. 1124, 1133 (1981). Thus, expenses for travel, meals, and lodging must be both reasonable and necessary.  With these guidelines in mind we turn to petitioner's expenditures for meals, lodging, transportation, and other travel expenses.

Petitioner typically stayed at "deluxe" hotels during his travels. For instance, on a trip to Baltimore, Maryland (paragraph 9 of the stipulation of facts), petitioner stayed at the Peabody Court at a rate of $180 per night. Similarly, on an 11-day AHEPA trip to Fort Lauderdale and Miami Beach, Florida (paragraph 10 of the stipulation of facts), petitioner stayed at the Sheraton Bonaventure Resort and Spa and the Doral Ocean Beach Resort, respectively, incurring lodging charges of $1,602.69. Respondent does not dispute the need for lodging on these or similar trips, but rather the reasonableness of the expenditures. While few would characterize petitioner's choices of accommodations as frugal, they were generally convenient. Petitioner often stayed at the hotel hosting the meeting he was attending. When petitioner could not obtain a room at the hotel hosting the meeting he would stay at a similarly priced hotel in the vicinity. This practice saved petitioner additional travel costs. In addition, petitioner held relatively prestigious positions in large charitable organizations, such that staying in quality lodgings may have been acceptable practice. Bearing in mind that reasonableness is a relative term, we conclude that petitioner's expenditures for lodging were reasonable.

Respondent also contends that expenses incurred for the rental of a suite during a trip to Washington, D.C. (paragraph 14 of the stipulation of facts), in excess of the ordinary room

charge should be disallowed because this expenditure was unreasonable. We hold that the rental of a suite was reasonable on this occasion because the travel at issue involved a week long stay and petitioner used the suite as a meeting place at which petitioner and officials of the Greek Orthodox Church could discuss their affairs.

We reach a different conclusion with respect to certain expenditures made by petitioner for tips[6] during 1990. Petitioner apparently had a habit of generously tipping hotel employees, such as valets, bellboys, and maids. On separate 3-day trips to Washington, D.C. (paragraph 8 of the stipulation of facts), and Baltimore, Maryland (paragraph 9 of the stipulation of facts), petitioner claimed a deduction of $100 per trip for such expenses. On an 11-day trip to Fort Lauderdale and Miami Beach, Florida (paragraph 10 of the stipulation of facts), petitioner claimed deductions in the respective amounts of $260 and $80.99 for such expenses. Similarly, on a 4-day trip to Richmond, Virginia (paragraph 11 of the stipulation of facts), petitioner claimed a deduction in the amount of $200 for such expense. We are cognizant of the fact that the defining characteristics of a reasonable tip vary with the nature and quality of the services provided. However, we regard the

---

[6] On the four trips mentioned below petitioner listed the expenses for tips as "misc." in the stipulation of facts.

reasonableness of a tip as within the ambit of "experience with the mainsprings of human conduct".  See Commissioner v. Duberstein, 363 U.S. 278, 289 (1960).  We conclude that the amount petitioner deducted as tips was in excess of a reasonable amount, and, accordingly, allow $15 per day for such expenses on each of these four trips.

We next consider whether any of the expenses claimed by petitioner constitute nondeductible personal or living expenses pursuant to section 262.  Petitioner claimed $161.60 as a deduction for expenses incurred for gratuities and taxes relating to the purchase of a 4-day spa plan while on the 11-day Fort Lauderdale/Miami Beach, Florida, trip (paragraph 10 of the stipulation of facts).  The actual cost of the spa plan was not deducted.  This expenditure was personal and unrelated to petitioner's performance of charitable services.

On a trip to Atlanta, Georgia (paragraph 15 of the stipulation of facts), petitioner deducted expenditures for gasoline.  Petitioner's receipts show that he filled the gas tank before he left his home in Charlotte, North Carolina, and again when he returned.  The second tank of gas was used for petitioner's personal affairs at home in Charlotte rather than the trip to Atlanta.  Accordingly, we sustain respondent's disallowance of $15 of the amount claimed for gasoline on this trip.

Petitioner claimed a deduction of $100 for repairs to his car incurred on a trip to Richmond, Virginia (paragraph 11 of the stipulation of facts). Petitioner used his car for charitable, business, and personal purposes. In order to deduct such an expense petitioner must show that the repair was necessitated by petitioner's charitable travel as opposed to his personal or business travel. Orr v. United States, 343 F.2d 553, 558 (5th Cir. 1965). Petitioner has failed to meet his burden of proof on this matter, and, therefore, the $100 repair expense is not deductible. See Smith v. Commissioner, 60 T.C. 988, 995 (1973).

Respondent contends that petitioner's expenditures for the following items were not necessary: (1) Expenditures made for the meals of others; (2) the rental of a limousine in Nassau, Bahamas, to transport petitioner and other officials of AHEPA to and from the airport; and (3) registration fees of others paid by petitioner at an AHEPA conference in Virginia Beach, Virginia. These three items involve the payment by petitioner of expenses attributable to other individuals.

Petitioner argues that his payment for the expenses of others are deductible on two grounds. First, petitioner argues that these expenses are deductible pursuant to section 170(a) because they were made "to or for the use of" a charitable organization. Second, petitioner contends that the payments are

deductible as unreimbursed expenditures incurred incident to his rendition of charitable services.

The phrase "or for the use of" was added after the word "to" in section 170(c) by Congress to allow a deduction for gifts made in trust for a charitable organization or under a similar legal arrangement. Davis v. United States, 495 U.S. 472, 485 (1990). None of petitioner's expenditures were made in trust for a charitable organization or under a similar arrangement. Thus, for petitioner to prevail on his first argument, the expenditures must have been made "to" a charitable organization. In order for a payment to be considered as made "to" a charity, the charity must have control over the funds donated. Davenport v. Commissioner, T.C. Memo. 1975-369. However, a donor's assertion that the charity would have spent the funds in the same manner does not vest the charity with control; the charity must have the ability to choose how the funds are spent. Id. In this regard, "Charity begins where certainty in beneficiaries ends". Thomason v. Commissioner, 2 T.C. 441, 443 (1943).

Petitioner, rather than the charitable organizations, controlled the disposition of the funds expended for the meals of others, the limousine, and the AHEPA conference registration fees. Further, none of these expenditures were made at the request of any of the charitable organizations. Therefore, the

expenditures made by petitioner for other individuals do not constitute payments "to" a charitable organization.

As noted above, section 1.170A-1(g), Income Tax Regs., allows a taxpayer a deduction for unreimbursed expenses incurred incident to the rendition of charitable services. In Davis v. United States, supra, the Supreme Court held that the taxpayers were not entitled to deduct amounts paid to their sons to finance the expenses of their sons' Mormon missions. In rejecting the taxpayers' claim that the expenses were deductible as unreimbursed expenses the Supreme Court noted that the taxpayers did not render the services, their sons did. Id. at 487. Petitioner's situation is slightly different, in that he did independently render charitable services. Nonetheless, we conclude the expenses paid on behalf of others are more accurately characterized as nondeductible gifts made to specific individuals rather than expenses incurred by petitioner incident to his rendering of charitable services.

Petitioner cites Rockefeller v. Commissioner, 676 F.2d 35 (2d Cir. 1982), affg. 76 T.C. 178 (1981), Smith v. Commissioner, 60 T.C. 988 (1973), and McCollum v. Commissioner, T.C. Memo. 1978-435, for the proposition that a taxpayer may deduct payments made for the expenses of others pursuant to section 1.170A-1(g), Income Tax Regs. McCollum and Smith involved situations where parents and their children incurred expenses while both rendered

charitable services. This Court held that the parents could deduct their own unreimbursed expenses and their childrens' unreimbursed expenses. Both cases were distinguished by the Supreme Court in Davis v. United States, supra, on the ground that the parents were being assisted by their children in rendering the services. Id. at 488. That is clearly not the situation here.

Rockefeller v. Commissioner, supra, involved the question whether certain incidental charitable expenses were deductible under section 170(b)(1)(C) and (g) in effect during the years 1969, 1970, and 1971. These provisions are not involved in this case, and the holding and reasoning in Rockefeller is inapposite. We conclude, therefore, that petitioner is not entitled to deduct expenditures made for meals, a limousine, and registration fees attributable to other individuals, but we are left with the task of discerning the portion of those expenses that related to other individuals.

Petitioner deducted $300 on a trip to Virginia Beach, Virginia, as registration fees (paragraph 24 of the stipulation of facts), $175 of which related to registration fees of others paid by petitioner. Accordingly, we hold petitioner is not entitled to deduct $175 of these expenses.

Petitioner claimed $640 as a deduction for a limousine on the Nassau, Bahamas, trip (paragraph 26 of the stipulation of

facts). Petitioner rented the limousine to transport himself and three other executives of AHEPA to and from the airport. Three-fourths of this expenditure is attributable to other individuals and is not deductible. However, respondent also asserts that the rental of a limousine was not a reasonable expense. Petitioner cites Denison v. Commissioner, T.C. Memo. 1977-430, for the proposition that the rental of a chauffeur driven car may constitute a deductible expense. Denison was decided under section 162. We agree that in certain circumstances the rental of a limousine may constitute a deductible expense under section 162, and we do not foreclose the possibility under section 170. However, in Denison, the taxpayers established that the expense benefited their business by impressing wealthy European clients. Petitioner has not shown that the rental of the limousine in Nassau benefited AHEPA, and, indeed, the expense has decidedly personal overtones. See Seed v. Commissioner, 57 T.C. 265, 276 (1971). Accordingly, we hold the rental of a limousine as transportation to and from an airport is not a reasonable expense in the rendition of charitable services. Despite this conclusion, petitioner is entitled to some deduction for transportation to and from the airport. We will allow $40 of the claimed $640 as a deduction for his transportation to and from the airport in Nassau. Cohan v. Commissioner, 39 F.2d at 543-544.

The task of discerning petitioner's portion of each meal expenditure is more troublesome because petitioner's testimony regarding the number of people present at each meal is incomplete.  Further, simply knowing the number of people present at a dinner does not necessarily provide a sufficient basis for allocating the bill among them.  Respondent allowed petitioner a deduction for meal expenses equal to the standard allowance for each trip.  Based on our review of the record, we conclude that petitioner purchased meals for others on the following trips:

| Location | Date | Stipulation of Facts Paragraph |
|----------|------|--------------------------------|
| Washington, D.C. | Apr. 21-23, 1990 | 8 |
| Baltimore, MD | May 18-19, 1990 | 9 |
| Richmond, VA | Sept. 14-17, 1990 | 11 |
| Washington, D.C. | July 7-12, 1990 | 14 |
| Knoxville, TN | Nov. 23-26, 1990 | 18 |
| Washington, D.C. | May 10-13, 1991 | 23 |
| Virginia Beach, VA | June 13-15, 1991 | 24 |
| Nassau, Bahamas | Aug. 11-16, 1991 | 26 |
| Washington, D.C. | Sept. 27-29, 1991 | 27 |
| Birmingham, AL | May 29-31, 1991 | 33 |

In light of the evidentiary problems associated with the allocation of meal expenses we adopt the standard allowance as a reasonable approximation of petitioner's expenditures for his own meals on the above listed trips.  Accordingly, on trips on which petitioner purchased meals for others, petitioner will be allowed a deduction for meals (and banquet expenses) equal to the amount

allowed by respondent in the stipulation of facts.[7]  On all other trips, for which we conclude petitioner is entitled to a deduction for travel expenses, petitioner is entitled to deduct the amount claimed for meals as set forth in the stipulation of facts.

Respondent contends that the expenses of certain entire trips are not deductible because they involved elements of personal pleasure, recreation, or vacation.  Respondent particularly takes issue with petitioner's trips to Virginia Beach, Virginia; Nassau, Bahamas; Fort Lauderdale, Florida; Athens, Greece; and Istanbul, Turkey.  Respondent notes:  (1) A letter describing the activities planned for the Virginia Beach AHEPA conference compared the trip to a "mini-vacation"; (2) petitioner received a facial and massage while in Nassau; and (3) petitioner enjoyed the use of a spa while in Fort Lauderdale. The trips to Athens and Istanbul require more explanation.

Petitioner traveled to Athens on August 28, 1991 (first trip); Athens and Istanbul on October 4, 1991 (second trip); and

---

[7]    In making their Rule 155 computations, the parties should note:  (1) We disallowed $67.69 of meal expenses relating to the Washington, D.C., trip on July 7-12, 1990 (par. 14 of the stipulation of facts) for duplication; (2) "meals" includes the board dinner listed in par. 18 of the stipulation of facts; and (3) respondent conceded a deduction of $1,116 for two "banquets" relating to the Birmingham, AL, trip on May 29-31, 1991 (par. 33 of the stipulation of facts).  Accordingly, as applied to the Birmingham trip, the disallowance relates only to the item listed as "meals".

Istanbul on October 29, 1991 (third trip). Petitioner recounts the reasons for these three trips (paragraph 34 of the stipulation of facts) as follows. Centuries ago the Roman Catholic Church and the Greek Orthodox Church split. Control of the Greek Orthodox Church has since rested in Istanbul (formerly Constantinople). The Patriarch of the Greek Orthodox Church is the equivalent of the Pope to the Roman Catholic Church. Prior to the first trip the Patriarch fell terminally ill. It became apparent that a successor would have to be named. The Archbishop of North and South America had the potential to ascend to the position. Turkish citizenship is a prerequisite for becoming a Patriarch. Unfortunately, the Archbishop's Turkish citizenship had been revoked. Petitioner embarked on the first trip, a 7-day stay in Athens, to petition the Turkish government to reinstate the Archbishop's citizenship. The trip was unsuccessful. As expected, the Patriarch passed away shortly after the first trip. Petitioner took the second trip to attend the funeral of the Patriarch. Finally, petitioner embarked on the third trip, as the official representative of his diocese, to witness the installation of the new Patriarch.

Respondent disallowed all the expenses of the first trip and disallowed expenses for gifts, meals, and lodging on the second trip. On the third trip, respondent disallowed only meal expenses.

Section 170(j) prohibits a deduction for, inter alia, unreimbursed traveling expenses incurred incident to the rendition of charitable services, "unless there is no significant element of personal pleasure, recreation, or vacation in such travel."  The meaning of a "significant element of personal pleasure, recreation, or vacation" is far from self-evident.[8]  An inquiry into the legislative history of this provision provides some insight.  The House report states:

> In determining whether travel away from home involves a significant element of personal pleasure, recreation, or vacation, the fact that a taxpayer enjoys providing services to the charitable organization will not lead to denial of the deduction.  For example, a troop leader for a tax-exempt youth group who takes children belonging to the group on a camping trip may qualify for a charitable deduction with respect to his or her own travel expenses if he or she is on duty in a genuine and substantial sense throughout the trip, even if he or she enjoys the trip or enjoys supervising children.  By contrast, a taxpayer who only has nominal duties relating to the performance of services for the charity, or who for significant portions of the trip is not required to render services, is not allowed any deduction for travel costs.  [H. Rept. 99-426, 129 (1985).]

The example makes clear that the relevant inquiry is the extent and duration of the charitable services provided by the taxpayer, and not some quantum measure of pleasure derived by the taxpayer. With this in mind we turn to the facts of this case.

With regard to petitioner's domestic travel and travel to Nassau, Bahamas, a review of the evidence reveals that petitioner

---

[8]    There is some case law interpreting this phrase in the context of sec. 213(d)(2)(B).  See, e.g., Commissioner v. Bilder, 369 U.S. 499 (1962).

did not enjoy a "significant element of personal pleasure, recreation, or vacation" within the meaning of the statute. The exhibits often contain itineraries detailing the activities scheduled at a particular conference. These itineraries corroborate petitioner's testimony and, together, establish that petitioner routinely spent a full day attending meetings or otherwise providing services while attending conferences. The Virginia Beach, Virginia, trip provides a good example. A letter describing the activities scheduled during this AHEPA conference indicated that golf and tennis tournaments were scheduled. However, petitioner served on the national executive committee. The letter shows that committee meetings lasted all day, precluding participation in the recreational activities. Accordingly, we conclude that section 170(j) does not prohibit petitioner from deducting expenses related to his domestic travel or his travel to Nassau, Bahamas.

We reach a different conclusion with regard to petitioner's travel to Athens and Istanbul. Petitioner has provided no evidence to establish the specific activities he undertook on either the first or third trip. Regarding the third trip petitioner asserts that he was an official representative of the church, however, this in and of itself is not enough to satisfy section 170(j). Therefore, we are unable to conclude that elements of personal pleasure, recreation, or vacation did not

constitute a significant element of the first and third trips. Petitioner provided an itinerary for the second trip showing the activities he undertook while attending the funeral of the Patriarch. However, petitioner has failed to establish that he provided any charitable services while on this sojourn. We conclude that petitioner attended the funeral as an observer. In sum, we find that section 170(j) prohibits a deduction for the traveling expenses incurred on petitioner's three trips to Athens and Istanbul. Compare <u>Seed v. Commissioner</u>, 57 T.C. 265 (1971).

While the gifts petitioner made to the Greek Orthodox Church on the second trip could be viewed as traveling expenses, they may also be viewed as independent charitable contributions. Thus, these expenses must be analyzed separately. Petitioner claimed a deduction for gifts on the second trip in the amount of $873. A review of the exhibits reveals that petitioner has only substantiated $37.30 of this amount. The evidence consists of two receipts, one for silver polish in the amount of $15.30 and one for tequila in the amount of $22. Petitioner failed to explain, and we fail to see, the usefulness of a bottle of tequila to the Greek Orthodox Church. We conclude that the tequila was, more likely than not, purchased for personal consumption or as a nondeductible gift to a specific individual. Accordingly, petitioner is entitled to a deduction in the amount of $15.30 for gifts made on the second trip.

Accuracy-Related Penalties

Section 6662(a) imposes a penalty equal to 20 percent of any portion of the underpayment attributable to, inter alia, negligence or disregard of rules or regulations. Sec. 6662(b)(1). Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). Negligence includes any failure to make a reasonable attempt to comply with the law. Sec. 6662(c). Failure to maintain adequate records constitutes negligence. Schroeder v. Commissioner, 40 T.C. 30, 34 (1963); Johnson v. Commissioner, T.C. Memo 1991-346, affd. without published opinion 8 F.3d 811 (3d Cir. 1993). Similarly, adopting a position that lacks a reasonable basis constitutes negligence. Sec. 1.6662-3(b)(1), Income Tax Regs. Disregard of the rules or regulations includes any careless, reckless, or intentional disregard. Sec. 6662(c). Disregard of the rules or regulations is careless if the taxpayer does not exercise reasonable diligence to determine the correctness of a return position that is contrary to a rule or regulation. Sec. 1.6662-3(b)(2), Income Tax Regs.

No penalty may be imposed under section 6662(a) for any portion of an underpayment with respect to which the taxpayer acted with reasonable cause or in good faith. Sec. 1.6664-4(a), Income Tax Regs. The determination of whether a taxpayer acted

with reasonable cause or in good faith is made on a case-by-case basis.  Sec. 1.6664-4(b)(1), Income Tax Regs.  Isolated computational or transcriptional errors are not inconsistent with reasonable cause and good faith.  Id.

Generally, with respect to the portion of the understatement attributable to petitioner's disallowed charitable contribution deductions, petitioner's errors did not rise to the level of negligence.  With few exceptions, petitioner substantiated the deductions claimed.  The disallowance of many of the deductions turned on the resolution of a difficult factual question, such as valuation, reasonableness, or the meaning of "personal pleasure, recreation, or vacation".

Despite our general finding, we conclude that petitioner was negligent with respect to certain items deducted as charitable contributions.  The "sleep or rest rule" is well settled law. Accordingly, we conclude petitioner carelessly disregarded the rules and regulations by deducting $25 for meal expenses on a 1-day trip in violation of this rule.  The prohibition on the deduction of personal expenses is equally well settled.  We again conclude petitioner carelessly disregarded the rules and regulations by deducting personal expenses.  This finding relates to petitioner's deductions for gratuities and taxes attributable to spa services and the extra tank of gasoline, discussed above. We exclude from this finding the $100 petitioner paid for an auto

repair, because this deduction was disallowed as a result of petitioner's inability to prove the repair was caused by charitable use of the automobile, not a disregard of the rules or regulations. We further conclude that the penalties should apply to the disallowed portion of the expenditures made for "gifts" on the second trip to Athens, Greece, and Istanbul, Turkey, because the disallowance of this deduction related to petitioner's failure to keep records and the attempt to deduct the cost of tequila as a gift to the Greek Orthodox Church. Finally, we note that we have not applied the penalties to the meal expenses that were deducted twice, as these can be fairly characterized as isolated transcriptional errors.

We sustain the penalties with respect to petitioner's disallowed employee business expense deductions. Several grounds existed to justify the disallowance of these deductions. In addition, petitioner's substantiation left something to be desired. The large majority of these deductions involved traveling expenses. Petitioner made no attempt to establish the business purpose for any of the deductions as required by section 274(d). Petitioner failed to specify the corporation to which these expenses were attributable. Furthermore, a colloquy at trial between respondent and petitioner revealed that petitioner's travel log was patently erroneous and most likely prepared in preparation for litigation. The log contained

numerous mileage entries that conflicted with mileage records on auto repair bills. Moreover, the pagination of the mileage log indicated that the entries in the 1991 log may have been written prior to the entries in the 1990 log. Accordingly, we find petitioner is liable for the penalties under section 6662(a) for 1990 and 1991 on the portion of the understatements attributable to the disallowed unreimbursed employee business expenses.

<u>Decision will be entered</u>

<u>under Rule 155</u>.